Judgment reversed.

## Scott *versus* Kittanning Coal Co.

1. A contract to deliver fifty thousand tons of coal in a year, the shipments to be made at the rate of six thousand tons per month, at the buyer's option, upon notices to be furnished on a certain day in each month for the quantity required for the succeeding month, is a severable contract.

2. Where there has been a part performance of such a contract, and coal has been received, paid for and consumed, the fact that for a portion of the coal thus received, other and inferior coal was substituted, does not give a right to rescind the contract; the appropriate remedy for injury received by such substitution is by set-off, or an action for damages.

3. It was not error to reject evidence of a false statement of the president of the coal company, as to the cost of the coal, made during the negotiations for said contract.

4. The pleas were "payment" and "*non assumpserunt.*" During the trial defendants moved to amend by pleading *set-off* specially, which was denied. *Held*, that had notice been given under the plea of payment, the set-off could have been proved with like effect, as if specially pleaded, and consequently the motion was really for leave to give notice of special matter which was within the discretion of the court. The case was not within the Act of 1806, which permits a defendant to "alter his plea or defence, on or before the trial of the cause."

5. Under the plea of non assumpsit, the defendant is entitled to give in evidence anything which shows that at the time the action commenced, the plaintiff had no right to recover, and under said plea defendants, in a suit for damages on the above contract for not taking a residue of the coal contracted for, had a right to show that of the coal delivered under the contract, a portion of other and inferior coal was substituted, and that damages were thereby sustained by defendants.

6. The same evidence is admissible as tending to prove that the plaintiff was not ready and willing to deliver the coal stipulated in the contract.

7. What was the true measure of damages in the case as above stated, considered by TRUNKEY, J.

February 24th 1879. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, WOODWARD, TRUNKEY and STERRETT, JJ.

Error to the Court of Common Pleas, No. 1, of *Philadelphia county :* Of July Term 1877, No. 2.

[Scott *v.* Kittanning Coal Co.]

Case by the Kittanning Coal Company against John C. Scott & Sons, to recover damages for a breach of a contract to take and pay for fifty thousand tons of coal.

The defendants originally pleaded payment, and subsequently on the trial added the plea of *non assumpserunt.*

The material portions of the contract which was in writing, were as follows :

1st. The Kittanning Coal Company agrees to deliver on board vessels at Greenwich wharves, its best run of mine bituminous coal, denominated Excelsior vein, from collieries in Clearfield county, in orders of said John C. Scott & Sons, at four dollars and sixty cents ($4.60) per two thousand two hundred and forty pounds, on shipments to points beyond Wilmington, Delaware.

2d. The quantity to be delivered is fifty thousand (50,000) tons, commencing with March 1st 1874, and ending with February 1875. Shipments to be at the rate of six thousand (6000) tons monthly,. at the option of the said John C. Scott & Sons, they giving notice on or before the twenty-fifth of each month of their requirements for the succeeding month.

At the trial, before Biddle, J., the plaintiff offered evidence tending to prove that defendants had not called for all the coal, and had never given the notices as required by the contract; but that deliveries of coal had been made upon shorter notice, for which the plaintiff had allowed credit.    The deliveries thus made, amounted to about eighteen thousand tons.    During the period these deliveries of the eighteen thousand tons were being made, it appeared that the plaintiff had bought coal from a neighboring mine.    This coal was placed on the cars at the mines, and as the cars when they left the mines, were exclusively within the control of the Pennsylvania Railroad, the plaintiff's witnesses could not say whether or not any of this purchased coal had been delivered to Scott & Sons.

The defendants offered to show that the formal notices required by the contract had been waived by the company, and the deliveries made and accepted under the contract; but that the plaintiff fraudulently substituted other and inferior coal for that contracted for, and concealed the fact from defendants, who accepted and paid for it in the belief that it was the coal stipulated for, and that by reason of this, defendants were compelled to abandon contracts made with their customers, under which they might have disposed of the entire amount of coal named in the agreement.

The defendants made the following offers of evidence :

To show what coals were loaded into the vessels of the Messrs. Scott, which were sent to Greenwich under this contract, and especially to show that among other loads on cars of coal that went in, were the car-loads described in manifests, which were produced by a witness on behalf of plaintiff, and which appear to have come

[Scott *v.* Kittanning Coal Co.]

from Mr. Bacon and White & Lengel, and other persons than from the Franklin colliery, Excelsior vein.

This offer was objected to, on the ground that there was no plea to raise such a defence, and the court sustained the objection. (Second assignment of error.)

To prove that the plaintiff fraudulently substituted other and inferior coal for that which they had contracted to deliver, and concealing this fact, delivered this inferior article, in part performance of the contract; that the defendants did not know, at the time of such deliveries, that the coal was of this inferior character; but finding objections made by their customers, made inquiries of the plaintiff, and were assured that the coal delivered was of the kind stipulated, and accepted and paid for the coal so delivered as part of the coal mentioned in the contract, believing it to be such, and as part performance of the contract; and that this fraudulent substitution involved the defendants in great losses, and prevented them from effecting sales of the balance of the amounts mentioned in the contract; which proof was to be followed by evidence that the plaintiff waived the clause in the contract calling for a notice, on or before the 25th of each month, for the requirements for the succeeding month, and accepted in lieu thereof other notices, and undertook to make, and did make, the deliveries above referred to, in part performance of their contract.

A like objection sustained. (Third assignment of error.)

To offer in evidence the twenty-five bills of lading or manifests produced by the plaintiff upon defendants' call, showing the coal shipped from various mines to the Kittanning Coal Company at Greenwich; to be followed by offering also in evidence forty-five papers, headed " Duplicate Manifest of Bituminous Coal, dispatched by Kittanning Coal Company from Franklin Colliery, Excelsior vein," sent by the plaintiff to the Pennsylvania Railroad Company at Greenwich; and to be followed by evidence showing that about five thousand tons of the coal, described in the twenty-five manifests first mentioned, were loaded into the vessels of the defendants, under the contract sued on, under orders from the plaintiff, and without the knowledge of the defendants; with further evidence that the fact that the coal referred to was not from the Franklin colliery, Excelsior vein, was studiously concealed from the defendants by the plaintiff.

Objected to, on the ground that this offer tended to prove a matter of set-off, and there was nothing in the record warranting this evidence of set-off. Objection sustained. (Fifteenth assignment of error.)

To show that the defendants did not know of the delivery of the coals from other mines than those of the Franklin colliery, Excelsior vein; that in the month of July 1874, one of defendants stated to Mr. Shillingford that the Pacific Mail Steamship Com-

[Scott *v.* Kittanning Coal Co.]

pany were complaining bitterly of the character of the coal; that witness had heard a report that the plaintiff was putting other coal into the vessels than that from the Franklin colliery, Excelsior vein, and asked Mr. Shillingford distinctly whether they were so doing or not; to which Mr. Shillingford replied that they were not so doing, but were furnishing them with the coal from their Franklin colliery, Excelsior vein, only.

Objected to as before, on the ground that it is only matter of set-off. Objection sustained. (Nineteenth assignment of error).

The defendants then offered the same evidence contained in the offers under the foregoing second and third assignments, as tending to prove that the plaintiff was not ready and willing to deliver the coal stipulated in the contract. Objection sustained.

(Fourth assignment.)

The defendants then offered to plead a set-off specially. This was objected to on the ground that after the plaintiff has closed his case the defendant cannot plead a set-off; which objection was sustained. (Fifth assignment of error.)

The defendants also offered to prove what occurred at the time of the negotiation of the contract for the purpose of showing the representations made by Mr. Shillingford, the president of the company, as to the cost of the production of the coal, and that the price named was based upon these representations; and further, that in that connection he stated that they had been and were then producing the coal at a certain price, or that it was costing them that price; that the defendants stated that if that was the cost they were willing to make the contract at $4.60 for 2240 pounds; that he then assured them or stated to them that that was what it had cost and was costing at that time; that on the faith of this statement the contract was entered into; that this statement was false, as the then cost was only ninety cents instead of $1.18, as represented, and was so known by him at the time of the representation; and that the contract was made upon the faith of that statement being true; that the cost of production at that time was a material element in the calculation made by the defendants, and was as stated by them to the president of the plaintiff, as it would enable them to determine whether they could compete successfully with other producers in the Clearfield and other sections.

Objections to both these offers were sustained.

(Sixth and seventh assignments.)

Defendants offered a number of letters from the defendants to the plaintiff, as tending, in connection with the orders or notices already in evidence, to show the course of dealing of the parties under the contract, and that the stipulation as to notice, on or before the twenty-fifth of each month, of the requirements of the succeeding month, had been waived by the plaintiff.

The objections to these letters were all sustained.

[Scott v. Kittanning Coal Co.]

(Eighth to fourteenth assignments of error, inclusive.)

The plaintiff submitted the following point, to which is appended the answer of the court:

If the plaintiff was competent to deliver coal according to the contract upon receiving notice of the quantity wanted, according to the contract, the plaintiff was entitled to recover the amount it would have received under the contract if the defendant had received the coal less the cost to the plaintiff of delivering the article, including the royalty on the cost.

Ans. " The law is correctly stated in this point."

(Twenty-sixth assignment of error.)

Among the points submitted by defendants were the following, with the answers of the court thereto:

4. That if the jury find that the plaintiff fraudulently and surreptitiously substituted other coal than that contracted for, of inferior quality, and that the defendants did not learn the fact till after the coal so delivered had been sold to their customers and consumers, and that the substitution was made to the extent of thousands of tons, and with the intent to defraud the defendants, such substitution would entitle the defendants to repudiate the contract and decline to accept any further deliveries from plaintiff.

Ans. " That proposition I negative in this particular suit."

(Thirtieth assignment of error.)

5. That if plaintiff is entitled to recover at all, it must be because the defendants failed to take the coal at the times at which they should have taken it, and if so entitled, the measure of damages is the difference between the contract price and the market price at the times at which the defendants should have taken it under the contract.

Ans. " As I have already said, I do not think that that is the true measure of damages.    I think the true measure of damages is the profit the plaintiff would have made upon this operation, which would be, of course, deducting from the price agreed to be paid, the cost of its delivery and the royalty."

(Thirty-first assignment of error.)

The verdict was for the plaintiff for $20,864.88.    A remittitur of $3,531.80 of this amount was afterwards filed.    The defendants took this writ among their assigments of error being those above noted.

Samuel Dickson and John C. Bullitt, for plaintiffs in error.— The substitution of five thousand tons of other coal in the deliveries made entitled the defendants to rescind.    The contract being entire the defendants could not be required to accept anything less than entire performance.

Fraud in the performance of a contract will justify its rescission as well as in its inception.    The offers of defendants were to show

[Scott *v.* Kittanning Coal Co.]

that the substitution had been fraudulently made. This was competent evidence under the plea of non assumpsit: Heck *v.* Shener, 4 S. & R. 249; Libhart *v.* Wood, 1 W. & S. 265; Ridgway *v.* Hungerford Market Co., 3 A. & E. 171; 30 E. C. L. R. 59; Mercer *v.* Whall, 5 Q. B. 447; Telegraph Co. *v.* Rubber Works Co., L. R. 10 Ch. Ap. 515; Clough *v.* Railway Co., L. R. 7 Ex. 26.

The offer which is the subject of the seventh assignment of error contained all the elements to make out a false representation. It was to prove that the statement of cost was false—was known to be so by the president of the company when he made it—that it was material—and induced the defendants to enter into the contract: Krumbhaar *v.* Birch, 4 W. N. C. 144; Short *v.* Stevenson, 13 P. F. Smith 95.

The measure of damages was clearly the difference between the contract and the market prices at the time when the coal should have been taken. It was the duty of the company to have the coal actually ready for delivery. Then if they had not received the required notice for the month they could have disposed of the production for the ensuing month as they saw fit; but not having shown that they had mined the coal, or were ready to deliver it, they were not in condition to perform, which was a condition precedent to the right to recover.

*A. Sydney Biddle* and *R. C. McMurtrie,* for defendants in error. —As the coal actually supplied had been paid for, the suit concerned only the damages sustained in respect to the balance. As there was no plea of set-off, or payment with leave, no evidence was admissible which related to injuries alleged to have been sustained by breach of contract in the delivery of the eighteen thousand tons. The contract was divisible, and the covenant of quantity was independent, and not a condition precedent. The deliveries were not made on the original contract. In each instance the original contract was departed from, the required notice not having been given, and each delivery was made under a new contract. Can it be contended that a breach as to the quantity delivered under this new contract, whether from neglect or fraud, would entitle to a rescission of the original contract? Even if the coal delivered and accepted had not been paid for, and this action had been to recover the contract price of the eighteen thousand tons delivered, as well as the loss on the residue undelivered, the position of defendants would be untenable: Boorne *v.* Eyre, 1 H. Black. 273, n. a; Duke of St. Albans *v.* Shore, Id. 279; Campbell *v.* Jones, 6 Term Rep. 570; Simpson *v.* Crippin, L. R. 8 Q. B. 16; Withers *v.* Reynolds, 2 B. & A. 882; Fillieul *v.* Armstrong, 7 A. & E. 557; Franklin *v.* Miller, 4 Id. 599.

The contract was never intended to be entire. The covenant as

[Scott *v.* Kittanning Coal Co.]

to the quantity was independent. The evidence of injury to the defendants in the substitution of inferior coal among the cargoes paid for and delivered, was not admissible under the pleas of non assumpsit and payment: Erwin *v.* Leibert, 5 W. & S. 105; Heck *v.* Shener, *supra;* Alexander *v.* Pusey, 13 S. & R. 454; Dunlap *v.* Miles, 4 Yeates 370.

The question is really a simple one. What is this claim, arising from the inferiority of part of the goods, which have been sold, delivered, accepted and paid for? Is it, as the defendants claim, a discharge of liability to accept other goods not delivered? Or is it not, rather, a claim that can be sued for (or that can be deducted as a set-off, when set-off is pleaded)? If not used as a defence, the claim may be sued for in a separate action, which proves it to be a set-off; for, if not, the party would be concluded by the verdict, though the defence was never taken.

Mr. Justice TRUNKEY delivered the opinion of the court, May 5th 1879.

The Kittanning Coal Company agreed to deliver, on board vessels at Greenwich wharves, fifty thousand tons of its best run of mine bituminous coal, denominated Excelsior vein, from collieries in Clearfield county, commencing with March 1st 1874, and ending with February 1875, at the rate of six thousand tons monthly, at the option of John C. Scott & Sons, they giving notice on or before the 25th day of each month of their requirements for the succeeding month. Scott & Sons agreed to furnish vessels for and receive the above stated quantity of coal, and make payment therefor at thirty days from date of each bill of lading. That the contract was not entire, but severable, is obvious: Lucesco Oil Co. *v.* Brewer et al., 16 P. F. Smith 351; Morgan et al. *v.* McKee, 27 Id. 228.

The company delivered, and Scott & Sons received, under this contract, eighteen thousand thirty-eight and one-half tons of coal. This must be taken as an uncontroverted fact. The defendants affirm it. The plaintiffs proved it in the first breath of their testimony; repeated it, and added that this suit was brought to recover the damages sustained by the company by the neglect of Scott & Sons to take (or rather call for, when the amount would have been readily supplied) the balance of the fifty thousand tons at the price named in the contract (see their history of the case); and, in their declaration, aver that they "have done all things on their part required by the said agreement to be done, and were always ready and willing to deliver coal pursuant to their said contract to said defendants; and although said defendants did accept and pay for a small quantity of said coal, to wit, ten thousand tons, yet they, the said defendants, did not, nor would not, during the term of the said agreement, receive the residue of said coal."

[Scott *v.* Kittanning Coal Co.]

During the whole time for delivery and receiving of the coal, the defendants gave no notice, on or before the 25th of any month, of their requirements for the succeeding month. Deliveries were made from time to time, as called for, beginning in March and ending in October. This also both parties affirm.

It was the duty of the defendants to make the calls for the coal, not exceeding six thousand tons per month, and receive the same, so as to permit delivery of the fifty thousand tons within the time limited. Nothing in the offers of testimony, for the purpose of showing a waiver of the requirements as to notice, would warrant a jury in finding that the defendants were relieved from making calls so that the plaintiffs could deliver the coal within the terms of the contract. What matters it whether proof were received of a course of dealing, showing a waiver of notice on the 25th day of each month, when the fact was already patent and undeniable that no coal was delivered or received without notice, and that such notice never was given on that date, but on such dates as suited defendants' convenience? The rulings upon those offers were not erroneous.

When notice was given to the plaintiffs, if they were bound to deliver at all in pursuance thereof, they were bound to deliver the very coal designated by the contract. They could not lawfully substitute any other without defendants' consent; and defendants could have refused any other coal, whether inferior or superior, for they were entitled to the specified article. If the plaintiffs stealthily substituted inferior coal, they perpetrated a fraud upon defendants, for which they are answerable. If authority were wanting for the foregoing, it is in the cases cited by defendants, but it is not gainsaid.

It is contended by defendants that if fraudulent substitution of coal was made in the delivery, they may now rescind the contract. The cases cited, we think, do not rule this. Where a servant or laborer claims wages, a physician or attorney fees, an agent or trustee commissions, fidelity lies at the bottom of the service, the breach whereof forfeits right of compensation. If two have an executory contract and one colludes with the other's agent respecting its performance; or if in an agreement for sale, the price to be fixed by C., one party bribes C., the wrongdoer shall not profit by his turpitude, nor by the agreement itself. In a sale and delivery of goods, there is not such relation of trust and confidence as where one does service for another, and in delivery of a similar but different article there may be no fraudulent intent, and if there be, it is not of so heinous a nature as bribing a referee or corrupting the other's agent. True, a fraudulent delivery of one article for another authorizes rescission of an entire contract, perhaps would of a severable one, but not after the

[Scott v. Kittanning Coal Co.]

goods had been accepted, paid for and consumed. Rescission is one form of remedy for a defrauded party which, generally, he may exercise upon discovery of the fraud, though he cannot wholly restore; and if the fraud be not discovered in time for that remedy, others remain whereby he may recover damages. This contract was severable and the coal delivered was paid for and used by defendants. They can restore nothing. They never notified plaintiffs that they would receive no more coal for their default in performance. We are not convinced that there was error in holding that the appropriate remedy for the alleged fraud, discovered at the trial, was by set-off or action for damages.

The pleas were "payment" and " *non assumpserunt.*" During the trial defendants moved to amend by pleading set-off specially, which was denied. Had notice been given, under the plea of payment, the set-off could have been proved with like effect, as if specially pleaded, and, consequently, the motion was really for leave to then give notice of special matter. Whether to allow it was in the discretion of the Court of Common Pleas. The case was not brought within the Act of 1806, which permits a defendant to "alter his plea or defence, on or before the trial of the cause." The rights of defendants under that act are well stated by Lewis, J., in Yost v. Eby, 11 Harris 327.

Error is assigned to the rejection of evidence of a false statement of the president of the company, as to the cost of placing coal on board vessels at Greenwich, made in negotiations for the contract. An action for deceit for fraudulent misrepresentation by the vendor of the price he had paid, or of the price he had been offered for the subject of the contract cannot be sustained: Hemmer v. Cooper, 8 Allen 334; Davis v. Meeker, 5 Johns. 354. The defendants rely on Krumbhaar v. Birch, 4 W. N. C. 144, and Short v. Stevenson, 13 P. F. Smith 95, as ruling the point in their favor. The former is where one sold his right, title and interest in a patent right, for territory including Philadelphia, representing that he owned half the patent right, whereas, he had before sold his whole interest for Philadelphia; and the latter where one purchased land for himself and associates, and pretended to his associates that he had paid $12,000 for it when he had only paid $6000. These decisions do not touch the question, is it a fraud for a vendor to misstate the cost or price of the article he is selling? The legal answer seems as well settled as the moral one, though they are dissimilar, and the seventh assignment is not well taken.

By the plea of non assumpsit, the defendant puts the plaintiff on proving his whole case, and entitles himself to give in evidence anything which shows that, at the time the action was commenced, the plaintiff had no right to recover: Heck v. Shener, 4 S. & R. 248. That action was for housekeeper's services and for goods sold, and it was held that, under the plea, evidence was admissible

[Scott *v*. Kittanning Coal Co.]

that the plaintiff had embezzled goods of defendant, not as a set-off, but to defeat the action. "As to the objection of the plaintiff being taken by surprise, it is no greater surprise, than when under the same plea, the defendant gives in evidence, a release, infancy or coverture. Neither do I think there is much force in the other objection, that the matter of the evidence is not a liquidated debt or demand. If it is of 'sufficient magnitude to bar the plaintiff's action, there will be no need of going into calculations. But if not sufficient for that purpose, it is as easy for the jury in this action to ascertain the amount to be deducted from the plaintiff's demand, as it is for the jury in an action to be brought by the defendant against the plaintiff to ascertain the amount of his damages." Per TILGHMAN, C. J. Under this plea the defendant may show that the plaintiff is an insolvent debtor and the cause of action vested in his trustees; that the plaintiff accepted goods at another place than that mentioned in the contract; a former recovery; and that the work for which the plaintiff claims was done in an unworkmanlike manner: Kennedy *v*. Ferris, 5 S. & R. 394; Scott *v*. Province, 1 Pitts. 189; Gilchrist *v*. Bale, 8 Watts 355; Gaw *v*. Wolcott, 10 Barr 43. In Falconer *v*. Smith, 6 Harris 130, it was held that, in an action on notes given for machinery, it was competent for the defendant to prove that when the agreement was made the plaintiff warranted the machinery to be of a certain quality and that the warranty had failed, though the notes were given several months after the date of the agreement. The plea of non assumpsit "entitles the defendant, without prior special notice, to give evidence of anything which shows, *ex æquo et bono*, the plaintiff ought not to recover. This is emphatically true of matters of defence springing from or immediately connected with the transaction sued on, and impeaching the consideration of the contract averred by the plaintiff. * * * It is true that under our more recent decisions, unliquidated damages for a breach of warranty may be averred as matter of set-off, and then a special plea or notice would be necessary; but, as was justly observed in Sadler *v*. Slobaugh, 3 S. & R. 388, a breach of warranty may, at the option of the defendant, be either reserved as the foundation of a separate action, or set up as a defence, going to the consideration of the assumpsit sued on." Per BELL, J.

In various forms the defendant offered to prove that the plaintiffs fraudulently substituted inferior coal from other mines for that which they had contracted to deliver, and, concealing this fact, delivered the inferior article in part performance of the contract; that the defendants did not know at the time of such deliveries that the coal was of this inferior character; that finding objections made by their customers they inquired of plaintiffs and were assured by them that the coal delivered was of the kind stipulated, and they accepted and paid for the same as part of the coal men-

tioned in the contract, believing it to be such; and that this fraudulent substitution involved the defendants in great loss, prevented them from making sales of the balance of the coal mentioned in the contract, and disabled them from receiving the same.

At present it must be taken as if they had the testimony at hand to establish the facts in the offers. Had it been received it might have availed as a complete defence. The matter was immediately connected with the transaction which is the basis of this suit; it shows a wilful injury in the performance of part of a contract by the plaintiffs upon which they claim damages because the defendants failed to perform. By the settled law of this state the offered testimony was admissible under defendants' plea of *non assumpserunt*, not to prove a set-off, but to prove that the plaintiffs had no right to recover. Besides, it was again specially offered as tending to prove that the plaintiffs were not ready and willing to deliver the coal stipulated in the contract. Why was it not admissible for this purpose? If the company pretend they were always ready and willing to perform, is it not evidence in rebuttal that when called on for coal they gave it from other mines? Slight it may be in the opinion of the court, but its weight was for the jury. We are of opinion there was error in rejecting the offers of testimony set forth in the second, third, fourth, fifteenth and nineteenth assignments.

The only remaining assignments we shall notice are the twenty-fifth, twenty-sixth and thirty-first, which relate to the question of damages. We think the instructions of the learned judge correct, except in not considering the value of the coal in plaintiffs' mines; but it seems his attention was not directed to this, and we would pass it, were the cause not to be tried again. Compensation should be the criterion in this as in other actions for breach of contract. Most frequently the simple rule that the measure of damages is the difference between the contract price and the market price at the time the contract ought to have been completed, gives the injured party a fair recompense for his loss. In a case like this that would be inadequate. Had the plaintiffs mined and stocked so large a quantity of coal the loss in increased handling, waste and the like, would not be covered by the difference between the market and contract price, to say nothing of the improbability of finding a market for the coal. The contract did not require them to mine and stock—it was enough if they were competent to deliver the coal according to contract; that is, had their mines in order, the miners, and all necessary means to mine and deliver the coal, and were prevented by default of defendants. In such case, nothing short of the value of the contract would be a compensation. That would be determined by deducting from the contract price the cost of delivery, including the royalty and the value of the coal as it remained in place. Possibly the coal, in the opened mines, in

working order and with large capacity, at the time the contract should have been performed, was of no value to the vendors. It may have been worth nothing above the royalty. Unless it was worthless as it remained in place, the property of the plaintiffs, they ought not to recover the difference between the contract price and the sum of the cost of delivery and royalty.

Judgment reversed, and a *venire facias de novo* awarded.