## CLEVENGER v. THE MUTUAL LIFE INSURANCE COMPANY.

1. EVIDENCE: WRITTEN POLICY AND APPLICATION FOR INSURANCE · ORAL AGREEMENTS MERGED.  The written application for insurance provided that "statements will not be recognized by the company, unless the same are made in writing upon this application;" and the policy issued thereon provided that no stipulation or agreement should be in force unless in writing.  *Held:*—That all statements and oral agreements with the agent were merged into the written application and policy, and could not be received in evidence.

2. EVIDENCE: AGENT: ORAL AGREEMENT WITH.  Unless there is evidence tending to prove that the company has, by custom, or otherwise, departed from or sanctioned a departure from the written contract, it is error to admit evidence of an agreement with the agent other than that contained in the written contract.

3. MUTUAL LIFE INSURANCE: BASIS OF: CANNOT VARY AS TO PARTICULAR CASE.  While a Mutual Life Insurance Company may extend the time for payment of premium notes, or waive a forfeiture, it cannot lawfully contract with a particular person taking insurance, on a different plan or basis than applies to all others.

*Appeal from the Yankton County District Court.*

ACTION to recover premiums paid on a policy of life insurance. Verdict, and judgment for plaintiff.  The facts appear in the opinion.

*Gamble Bros.*, for appellant.

*Oliver Shannon*, for respondent. No briefs filed.

BARNES, J.—This is an appeal from the Second District:

1st. The complaint charges that the defendant is a corporation created under the laws of the State of New York, and has for its agent Mark. M. Parmer, at Yankton, Dakota.

2d. That on the 22d of August, 1873, it issued a Life Insurance policy to plaintiff, on the life of Shobal V. Clevenger.

3d. That plaintiff has regularly paid premiums on said policy at the rate of thirty dollars and five cents quarterly.

4th. That the defendant received and obtained said money from plaintiff from time to time as per statement below, under false representations, promises and undertakings, in that the said defendant agreed, undertook and promised to refund and pay back to this plaintiff, whenever she desired to surrender said policy, the full amount of said payments, less a certain percentage thereof, as plaintiff understood, not to exceed ten per cent.

5th. That plaintiff has offered to surrender said policy on payment to her of ninety cents on the dollar of the amount paid in by her on said premium, which defendant refused, but offers and proposes to pay her forty-eight dollars and forty-three cents.

6th. From the statement accompanying the complaint it is claimed that from August 23d, 1873, to August 23d, 1877, the plaintiff paid in premiums the sum of five hundred and ten dollars and eighty-five cents on a Life Insurance policy of five thousand dollars. The plaintiff then credits the company for alleged dividends—one hundred and twenty dollars—leaving of cash paid as premiums for the four years, three hundred and ninety dollars and fifty-nine cents, or about ninety-seven dollars and fifty cents per year.

7th. The defendant by answer denies the allegation in the complaint of the making the promises or representation as therein stated; and further alleges that the agent, Parmer, had no au-

thority in law to make said representation, or agreement; and further, the defendant avers that the contract or agreement of insurance was in writing, and consisted of the application for insurance, and the policy of insurance, granted upon the application.

We depart from the order pursued at the trial, and here insert such stipulations as appear in the application and policy of insurance contract, and as are pertinent in the investigation of this case, viz:

"And it is hereby expressly stipulated and agreed that the above application and this declaration form the basis of the contract between the above named person and the said, the Mutual Life Insurance Company of New York.

"By insuring in the Mutual Life Insurance Company of New York, you become a member of the company and share in the profits. This company is established on the mutual plan; the entire profits, deducting necessary expenses alone, being divided among the assured in the most equitable manner.

"The surplus of this company is carefully ascertained, and the whole amount is divided among the policy holders exclusively, in proportion to the over payment or earnings, in accordance with a plan inaugurated by this company, and indorsed by the leading mathematicians of this country and in Europe, and the charter of this company."

Here it is proper to observe that the defendant is a Mutual Insurance Company; that the plaintiff, the assured, is a member of that company; that in entering into this contract the plaintiff and defendant have agreed upon the manner of ascertaining the profits or surplus of this company, and its division among the policy holders upon a purely equitable basis.

We here note a further stipulation of this contract: "All policies in force at the time of making a dividend, including those issued between dividends, and also those which have become claims since the last dividend, participate in the surplus of this company."

Again, we find this stipulation: "You will not loose all. After two years the Mutual Life Insurance Company of New York will

Clevenger v. The Mutual Life Insurance Company.

grant a new policy which, without further payment, will assure to your representatives at your death a reversionary sum equivalent to the present value of the policy on surrender, or they will purchase your policy and pay you the value for it in cash on surrender."

Next we observe the stipulation or provision of this contract providing for the surrender of the policy of insurance, should the assured desire to do so, which is as follows:

"Should the original motive for effecting an insurance in this company cease, the party may, on application in accordance with the company's rules, surrender his policy for an *equitable* consideration, which will be paid to him in cash by the company. Or if it is found inconvenient to continue the payment of the annual premium, the company will, after two year's premiums have been paid, grant a new policy, which, without further payment, will assure to the representative of the party at his death a reversionary sum equivalent to the present value, on surrender of the original policy, provided application for such paid up policies be made within sixty days after lapse of original policy."

We here insert the following, which appears on plaintiff's application:

"NOTICE.—This company accepts cash only in payment of premiums. No policy is binding until the premium has been paid. Statements will not be recognized by the company, unless the same are made in writing upon this application"

This brings us to the consideration of an important part of the policy of insurance, which we here insert in full:

" No alteration of the terms of this contract shall be valid, and no forfeiture thereunder shall be waived, unless such alteration or waiver shall be in writing and signed by the president or secretary of the company; no agent of the company has authority to make, alter, or discharge contracts, waive forfeiture, extend credit, grant permits, or make an extra rate for special risks. And inasmuch as the issuing of each policy is decided by the officers of the company at the general office in the city of New York; and as they act upon the written statement and representations hereinbefore referred to, it is expressly agreed that no statements or information, made or given to the person procuring or transmitting the application, or to any other person (unless such statements or information shall have been reduced to writing in said application, and presented to the officers of the company at the general office in the city of New York,) shall bind the company or in any way affect its rights."

From the foregoing stipulations forming a part of the contract,

it unmistakably appears that the parties to the contract, as well the plaintiff as the defendant, intended to provide against any change in the contract, either by adding to, or taking from it; and that the parties thereto expressly agreed that no statement or information made or given by the agents should be binding, unless reduced to writing, made a part of the application, and forwarded to the home office of the company, and there approved and sanctioned; and, that there should be no opportunity thereafter for a misunderstanding or disagreement between the parties to the contract, as appears from the evidence, each of the sixteen quarterly receipts issued by the company to the assured, contained a notice that the agent was not authorized to make, alter or discharge contract, or waive forfeitures, and especially calling the attention of the assured to the terms of the mutual agreement embraced in the application and policy.

We note:

*First*—As appears by this contract of insurance, that every policy holder in the " Mutual Life Insurance Company of New York," becomes a member of the corporation or association, of which, at the date of the issue of the policy to the plaintiff, there were one hundred and forty-seven thousand four hundred and ninety-four.

*Second*—That plaintiff's application, the policy of insurance, embracing stipulations and notices, constitute the contract and agreement of the parties.

*Third*—By the terms of this contract everything pertaining to this contract, and the adjustment of all questions under it is, to be on a just and equitable basis, having due regard to the rights and interest of every member of the corporation or organization.

*Fourth*—The parties to this contract, plaintiff and defendant, agree that no stipulation or agreement shall be in force, unless in writing.

*Fifth*—In accepting the application and forwarding the policy— and we must say from abundant caution—the attention of the assured is again called to the terms of the contract, and to the fact that the agent can make no statement, contract or agreement that will be recognized by the company, or by which the company will

be bound, unless in writing, and signed by the president or secretary of the company.

The policy, this statement or stipulation forming a part of it, was accepted by the plaintiff, retained by her, and after its acceptance, she makes fifteen payments upon it, and each and every time of making a payment, she receives a receipt containing a notice that agents are not authorized to make or alter contracts.

By the terms of this contract it is apparent that it was the intention, as well as the express agreement in plain terms, to provide for the sale or exchange of plaintiff's policy, should the plaintiff so desire, and upon such terms as should be just and equitable; and that neither the assured nor the company should be in any way compromised, hampered, effected, or in the slightest degree bound by the agent's agreements or declarations.

If, for the time being, we assume that the agent, Parmer, has attempted to change or alter the contract of insurance as stipulated and agreed upon by the parties to it, clearly he had no power to do so, as was well known and understood by plaintiff and defendant. It is unnecessary to discuss the nature of Mr. Parmer's agency. For, be it specific or general, by the solemn compact and contract made in writing by the contracting parties, the agent, Parmer, if otherwise possessing power is, by the contract and agreement of the parties in this instance, completely and absolutely divested of it. The plaintiff's counsel refers to the case of *Phebe A. Norton v. Knickerbocker Life Insurance Company of New York.* (6 Otto, 234.)

Why the plaintiff cites this case I am unable to discover. The case of *Norton v. Insurance Company,* was to recover upon an insurance on the life of Jesse O. Norton by his widow, Phebe A. Norton. The company resisted payment on the ground that Norton, in his lifetime, failed to pay a note or notes to the company at maturity, and that thereby, and by the terms of the contract, the rights of the assured and of the plaintiff under the policy had become forfeited. The plaintiff replied that the agent of the Insurance Company at Chicago, regularly authorized by defendant so to do, extended the time of payment of the note to a day certain, and on

that day the money was properly tendered and the tender refused. The defendant denied the extension of time, or the waiver of the forfeiture, and this was the issue tried. And the burden of proof upon this issue was conceded to be upon the plaintiff; to maintain which, the plaintiff called three witnesses—the agent, with whom the agreement for the extension of time of payment was made, one Randall, a former agent, and Martin Norton, who acted for his father in procuring the extension. The testimony of these three witnesses tended to prove that formerly the company had allowed these agents to extend the time of payment on premium notes ninety days, after that for sixty days, and then thirty days; and that at the time in question, as a general rule, the agent was required to return notes by the middle of the month following that on which they became due. As to what took place with reference to the extension of the time of payment there is some conflict between the witnesses as to the two questions of facts. The authority of the agent to grant the indulgence or extension of time; and as to the further question, whether the extension of time was in fact given, being the two material issues, they were submitted to the jury from the evidence to determine. Mr. Justice Bradley, after stating the case, delivered the opinion of the court:

"The material question in this case is, whether in view of the express provisions of the policy the evidence introduced by the assured was relevant and competent to show that the company had authorized its agent to grant indulgences as to the time of paying the premium notes, and waive the forfeiture incurred by their non-payment at maturity, or to show that any valid extension had in fact been granted, or the forfeiture of the policy waived. The written agreement of the parties as embodied in the policy and the indorsement thereon, as well as in the notes and the receipts given therefor, was undoubtedly to the express purport that a failure to pay the notes at maturity would incur a forfeiture of the policy. It also contained an express declaration that the agents of the company were not authorized to make, alter or abrogate contracts or waive forfeitures. *And these terms, had the company so chosen, it could have insisted on.* But a party always has the option to waive a condition or stipulation made in his own

favor.   The company was not bound to insist upon a forfeiture, though incurred, but might waive it.   It was not bound to act upon the declaration, that its agents had no power to make agreements or waive forfeitures, but might at any time, at its option, give them such power.   The declaration was only tantamount to a notice to the assured, which the company could waive and disregard at pleasure.   In either case, both with regard to the forfeiture and to the powers of its agent, a waiver of the stipulation or notice would not be repugnant to the written agreement, because it would only be the exercise of an option which the agreement left in it.   And whether it did exercise such option or not was a fact provable by parol evidence, as well as by writing, for the obvious reason, that it could be done without writing.   That it did authorize its agents to take notes instead of money for premiums, is perfectly evident from its constant practice of receiving such notes when taken by them.   That it authorized them to grant indulgence on these notes, if the evidence is to be believed, is also apparent from like practice.   It acquiesced in and ratified their acts in this behalf.   For a long period it allowed them to give an indulgence of ninety days; after that of sixty; then of thirty days. It is in vain to contend that it gave them no authority to do this, when it constantly allowed them to exercise such authority, and always ratified their acts, notwithstanding the language of the written instruments.   We think, therefore, that there was no error committed by the Court below in admitting evidence as to the practice of the company in allowing its agents to extend the time for payments of premiums and of notes given for premiums, as indicative of the power given to those agents; nor any error in submitting it to the jury, upon such evidence, to find whether the defendant had or had not authorized its agents to make such extensions; nor in submitting it to them to say whether, if such authority had been given, an extension was given in this case."

This being the decision of the United States court, it is supreme authority as to this court, and it must be regarded as disposing of at least five important questions presented in the case at bar:

*First*—That the local agent, whether he be a special or general agent, has no authority by virtue of his powers as such agent, to

alter, enlarge, modify, or in fact to do any act affecting the rights of the parties to the contract of insurance.

*Second*—That an Insurance Company may insist upon the enforcement of the contract of insurance, as embraced in the written agreement.

*Third*—The Insurance Company may waive a forfeiture in its favor, and that the fact that the company has adopted or sanctioned a practice of this kind may be proved by parole.

*Fourth*—That evidence of a particular transaction of the kind on a former occasion, is not sufficient to establish a custom.

*Fifth*—The custom and usage of the company as to extension of time being established, parole evidence may be received to show the extension of time in the particular case.

In the case at bar there being no evidence tending to prove that the Insurance Company, by custom, or otherwise, had departed from or sanctioned a departure from the written contract. The District Court erred in allowing evidence to be given, as to what is claimed as a contract between Parmer, the agent, and Clevenger, the assured, there being no foundation for the introduction of such evidence. Again the Court, in instructing the jury, made use of the following language :

"A representation may be oral or in writing, and it may be made at the same time with issuing the policy or before it, and its language is to be interpreted by the same rules as the language of contracts in general."

As applied to the case at bar this instruction is erroneous, as contracting parties agreed most solemnly that as to this contract no statement of an agent should be binding upon the parties, unless in writing, and this agreement must prevail. The following question was propounded to the witness, Clevenger :

"State what occurred, if anything did occur between you and Mark. M. Parmer, and what representations, if any were made by said Parmer, to induce you to take the Life Insurance policy in question ?"

To this offer, the defendant objected for the following reasons :

"Because all conversations and agreements between the witness

and said Parmer were merged into the written application then signed by said witness, and the policy afterwards issued to the plaintiff, which was in writing, showing upon the face thereof that said Parmer could not vary the terms thereof; because said Parmer was not a party to said contract, and had no authority to make any representations contradictory to the same, which fact the plaintiff well knew from the face thereof; because no proof has been introduced that the agent had authority to make any other inducements than such as are in writing, and the defendant is not bound by such statements."

These objections were overruled. The evidence here given was manifestly improper. The objections to the evidence were timely and should have been sustained. Among other instructions asked by defendant's counsel we find the following, which we think were erroneously refused:

" *Ninth*—If the policy recites on the face thereof that said agent had no authority to make, alter, or discharge contracts, and that all the agreements were in writing, then said agent, Parmer, had no authority to make any of the alleged representations or agreements claimed by the plaintiff; and even if they were made, they are void as against the defendant—for when the plaintiff accepted said policy, she was bound to know its contents, and was bound to know said agent was not a party to said contract."

" *Eighteenth*—Even if the jury should find that the representations and agreements claimed by plaintiff were actually entered into, their verdict must be for the defendant; because neither the insured or agent complied with the express directions of the company in changing or altering the conditions of the contract, and the act of the agent cannot be considered as a waiver of the conditions by the company so as to bind it, or in any manner affect its rights."

" *Twenty-first*—Any agreement or statement by the agent or plaintiff, was bound to be in writing, and submitted to the defendant at its general office, with the application, and you are instructed not to take into consideration parole statements in making up your verdict."

Without pursuing this matter further, we are clearly of the

opinion the judgment of the District Court should be reversed. It may be inferred from what has been said as to the right of an Insurance Company to extend the time for the payment of premium notes or to waive a forfeiture, that it follows that the company may lawfully contract with a particular person taking insurance on a different plan or basis than applies to all others. Such, however, is not our judgment. Over one hundred and forty-seven thousand individuals have insured in defendant's company. By the terms of which, taking the agreement in this case as a basis, it appears that on the surrender of the policy the party surrendering is entitled to receive the true and equitable value of the policy surrendered. This being so, we do not see how this rule can be changed, not even by the officers of the company. A change to any other plan would be a fraud upon every individual holding a policy in the company. Much has been said upon the argument of this case about the fraudulent conduct of defendant, or defendant's agent. There may have been—indeed, it is apparent, if the testimony of Clevenger is true—there is, a bold attempt at conspiracy and fraud on the part of Clevenger and Parmer to defraud the Insurance Company. If the testimony of Parmer is true, then he is relived from the suspicion.

The plaintiff alleges cash payments amounting in the aggregate to three hundred and ninety dollars, and claims that by the terms of the agreement she is entitled on demand to the return of three hundred and fifty-one dollars and fifty-nine cents, leaving to the Insurance Company the sum of thirty-nine dollars and six cents; and this sum, (say nothing about the small amount of interest on instalments paid,) is to cover all the expenses, percentage of agents, medical examination, and the like, as well as compensation to the Insurance Company for carrying a policy of insurance of five thousand dollars for four years. The proposition is remarkable. The fraud is apparent. Let the judgment of the District Court be reversed, and the cause remanded to the District Court with direction that the action be dismissed with costs.

MOODY, J., concurring.

SHANNON, C. J., dissenting.