## MULLER v. STATE LIFE INSURANCE COMPANY.

[No. 3,344.   Filed June 4, 1901.

INSURANCE.—*Right to Sue Insurance Corporation.—Attorney-Gen-
eral.—Personal Individual Claim.*—Under the acts of 1899, p. 30,
enacting that no order, judgment or decree * * * interfering
with the business of any insurance corporation * * * organ-
ized and doing business under the provisions of this act shall be
made or granted, except upon the application of the Attorney-
General, an individual is not denied the right to enforce his personal
claim against an insurance company for money paid to the com-
pany as a premium, and to rescind his contract of insurance and
his vice-counselor's contract, which policy and written agreement
the insured returned to the company and demanded a rescission
thereof.  *pp. 48-50.*

SAME.—*Mutual Company.—Special Contract.*—A contract of a mutual
life insurance company appointing a member thereof as a vice-
counselor of such company, with rights to participate in a special
renewal commission dividend, in consideration of his favorable

influence, is not void for want of consideration, since the agreement of a member of a mutual company to use his favorable influence in behalf of the company amounts to more than the law exacts of him as a mere member.  *pp. 50, 51.*

INSURANCE.— *Vice-Counselor's Contract.* — *Recovery of Premium.*— Where the insured has paid the premium for the first year and received his policy of insurance and also a special vice-counselor's contract entitling him to participate in renewal dividends to be paid from the expense fund, he cannot after he has received the benefit of the insurance for a year return the policy and contract and recover the premium paid on the ground that the special contract is not enforceable, although such contract states that the premium paid is a part of its consideration, since the contract of insurance and the special contract are independent of each other, the contract of insurance being valid.  *pp. 51, 52.*

SAME.—*Reorganization of Company Under Act of 1899.*—Under §§27, 28 of the act of February 10, 1899, relating to insurance companies, it is not intended that a new company should be formed, but that the old company, without changing its identity or affecting its corporate rights, might by complying with certain requirements be authorized to do business in accordance with the provisions of the act.  *pp. 52, 53.*

SAME.—*Reorganization of Company Without Consent of Member.*— *Recovery of Premium.*—A member of a mutual insurance company is not entitled to recover a premium paid, on the ground that the company was reorganized without his consent, where the reorganization was under legislative authority, and the identity of the company and its rights and liabilities were not affected by such reorganization.  *p. 53.*

From  Tippecanoe  Superior  Court; *W.  D.  Wallace,* Judge.

Action by State Life Insurance Company against E. Reynolds Muller, on note.  From a judgment for plaintiff, defendant appeals.  *A'ffirmed.*

*D. C. Wilson* and *M. A. Quinn,* for appellant.
*C. F. Coffin,* for appellee.

ROBINSON, J.—Appellee sued appellant upon a promissory note.  Appellant answered in two paragraphs, and also filed what is termed a counterclaim in two paragraphs. Demurrers to each paragraph of counterclaim were sus-

tained. Appellant then withdrew both paragraphs of answer, and, refusing to make any further defense and electing to rely upon the counterclaim, judgment was rendered upon the note in appellee's favor. Sustaining the demurrers to the counterclaim is assigned as error.

The note sued on is dated February 25, 1899, is signed by appellant, and promises to pay appellee three months after date $67.81 with interest, the same being the amount of premium due on that day on policy number 15,619, of appellee. The note recites that it is not a payment for life insurance, but only an extension of time for the payment of the same, and if the note is not paid when due the policy ceases and the maker of the note becomes liable for the proportion of the face of the note and interest that the time the insurance has been extended bears to the whole time covered by the premium.

The first paragraph of counterclaim alleges that on February 25, 1898, appellee, being a mutual life association, organized under the laws of this State, appellee's agent solicited appellant to become a member, and, to induce him to do so, the agent represented that appellee would appoint appellant as a vice-counselor for the company; that the number of vice-counselors would be limited to 500; that as such vice-counselor appellant would be entitled to share in the funds set apart by the association to pay the expenses of conducting the association's business; that as such vice-counselor appellant would not be required to perform any duties other than were required of any other member of such association; that such appointment was irrevocable; that appellant was ignorant of the laws relating to the rights of members of the association, and, relying upon such representations solely, and not otherwise, and believing the association had the right to give him preference over its other members, and in consideration of his appointment as such vice-counselor, and not otherwise, appellant paid the association $72.90, and was accepted as a member; that

appellee executed and delivered to him a policy of insurance on appellant's life in the sum of $5,000, which should remain in force one year and as long thereafter as he should continue a member; that appellee executed and delivered to appellant a written instrument purporting to be an appointment of appellant as one of the 500 vice-counselors, but which in fact was intended both by appellant and appellee to confer on appellant only the right to participate in the assets of the association, to the exclusion of other members to whom such privilege was not given; that on the 25th day of February, 1898, there were and still are more than 400 other members to whom such privileges have not been given; that on February 25, 1899, appellant executed the note sued on as evidence only of the yearly sum due from appellant to the association as a member thereof, and not otherwise; that thereafter, and prior to the bringing of this suit, he was informed by his attorneys that such contract was a fraud, and not enforceable, and he thereupon returned and delivered to appellee the policy and written agreement, demanded a rescission of the contracts between him and appellee, repudiated his membership, and demanded a return to him of the $72.90, which appellee refused to do. The policy of insurance and vice-counselor's contract are made exhibits. The vice-counselor's contract states that "The State Life Insurance Company, in consideration of his favorable influence and good-will, and of his having paid a full annual premium on a policy of $5,000 insurance in said company, numbered 15,619, hereby selects Ernest R. Muller, of LaFayette, Indiana, as one of 500 policy-holders, each to be insured for a like amount, to participate in a special renewal commission dividend," which was to be paid from the expense fund of the company, which fund was to be provided in a manner therein specified, the dividends to continue as long as the policy remained in force.

It is argued by counsel for appellee that the court has no jurisdiction because of the seventeenth section of the act

approved February 10, 1899 (Acts 1899, p. 30), which provides: "No order, judgment or decree, providing for an accounting or enjoining, restraining or interfering with the prosecution of the business of any insurance corporation, association or society, organized or doing business under the provisions of this act, or appointing a temporary or permanent receiver thereof, shall be made or granted otherwise than upon the application of the Attorney-General on his own motion, or after his approval of a request in writing therefor by the Auditor of State, except in an action by a judgment creditor or in proceedings supplementary to execution." The same provision is contained in §18 of the act in force March 9, 1897 (Acts 1897, p. 318).

The above section should not be construed as denying the right of an individual to enforce any claim he might have against the company which is personal to himself, or which might arise out of or by virtue of a contract with the company. The fact that the result of his action, brought to secure his personal rights, might affect other individuals similarly situated should not preclude him from bringing his action. Besides, while it does appear that appellant was to be one of 500 persons similarly related to the company, it is not made to appear that any other persons did in fact enter into a like contract. So that, so far as the facts pleaded show, appellant is maintaining a purely and essentially private action, with the results of which only himself and the company are concerned, and is not asking for "any order, judgment, or decree providing for an accounting, or enjoining, restraining or interfering with the prosecution of the business" of the company, or the "appointing a temporary or permanent receiver thereof." In the case of *Lowery* v. *State Life Ins. Co.*, 153 Ind. 100, an individual brought an action to secure a perpetual injunction against the company's issuance of certain contracts and the payment of money on those already issued. Such an action was directly

against the mandate of the statute, and was so held in that case. To the same effect is *Swan* v. *Mutual, etc., Assn.,* 155 N. Y. 9, 49 N. E. 268, where a suit was brought by a policy holder for himself and others, to compel the company to set aside certain sums for a reserve fund, to limit its expenditures for management, etc.

It is argued that the vice-counselor's contract is void because of a want of consideration, and because appellee was at the time the contract was made a mutual company and "could not divert its expense fund to purposes of private gain." But we do not so construe the contract. It is not a contract of insurance, and can not be construed as a special contract of insurance. The policy of insurance issued to appellant was complete in itself and makes no reference to this vice-counselor's contract. The contract refers to the policy and was to continue as long as the policy remained in force. Although the company was a mutual company we can not say that the favorable influence and good-will especially contracted for means nothing more than what each member owed the company in any event. It can not be said that the favorable influence of a particular individual in a particular locality would be of no value to the company in extending its business in that locality. The contract discloses that its evident purpose was to secure a number of assistants upon whom the company might rely in extending its business, and when a member of a mutual company especially contracts to use his favorable influence he has contracted to do something more than the law exacts of him as a member simply of a mutual company. No legal duty rests upon such a member further than to make such payments and do such other acts as may be required of him by the terms of his policy, and if he does that, and there is a loss, there is a liability on the policy whether the member's conduct has been such as to retard or advance the general business of the company. It can not be said that the mutual principle of itself necessarily requires that each member

shall be insured upon exactly the same terms. Thus in *Mygatt* v. *New York, etc., Ins. Co.,* 21 N. Y. 52, the court said: "A mutual insurance company is simply a company whose fund for the payment of losses and expenses consists not of a capital subscribed or furnished by outside parties, but of premiums mutually contributed by the parties insured. * * * When it is considered that the term 'mutual', as applied to an insurance company, does not import any peculiar and exact method of producing mutuality, in the sense of equality, among its members, but that it is simply significant of an association for the purpose of insurance, whose fund for the payment of losses consists, not of a capital furnished by uninsured parties, but of the premiums mutually contributed by the persons insured, all difficulty on the subject is at an end."

The act under which appellee was doing business at the time the contract in question was executed provides that the company may make by-laws not inconsistent with the Constitution and laws of the State or of the United States. And it must be admitted that appellee, through its proper officers, might make contracts for enlarging and extending its business. *Boland* v. *Whitman,* 33 Ind. 64; Acts 1897, p. 318, §2.

Counsel for appellant cite the case of *Clevenger* v. *Mutual Life Ins. Co.,* 2 Dak. 114, 3 N. W. 313. But aside from a *dictum* contained in that opinion we fail to find anything to support appellant's position. The only question involved in that case was the validity of an oral agreement made with the insured by the company's agent that the surrender value of the policy should be a certain per cent. of the premiums paid, where the policy provided that an agent could not make any agreement differing from that provided in the application and policy. There was no question of any special contract between the insured and the company involved.

But even if we should concede that the vice-counsellor's contract is not an enforceable contract, appellant must fail

on his first paragraph of counterclaim. The contract and policy of insurance are both made parts of the counterclaim. It appears that policy number 15,619 was issued to appellant by appellee February 25, 1898, and that the annual premium paid was $72.90, which carried the insurance to February 25, 1899. The special contract states that this premium paid on this policy was a part of its consideration. When we look to both the contract and the policy, as we must, it is seen that the money appellant is seeking to recover in this action is the premium paid on this policy. Even if the contract was invalid, the policy is not tainted with its invalidity because the policy makes no reference to the contract. During the year the policy was in force appellee could not have escaped liability on the policy because of the contract. If the terms of the policy had been complied with, and there had been a loss, the company would have been liable. The insurance was valid, and the contract was fully executed by both parties before the bringing of this action. Appellant received valid insurance for one year, and the money he now seeks to recover was the premium paid for that insurance.

The second paragraph of counterclaim alleges that appellee, without appellant's knowledge or consent, on July 13, 1899, attempted to reorganize the company under an act approved February 10, 1899 (Acts 1899, p. 30), and had transferred all its assets to the company as reorganized and which assumed the name of which appellant was a member, that he never consented to such reorganization, and thereafter, and prior to bringing this action, he repudiated the insurance, returned the policy, and demanded the return to him of $72.90, the premium paid by him, and asks that so much as may be necessary of this sum be set off against any amount found due by reason of the note sued on, and that he have judgment for the balance.

It is not necessary to decide what the effect of the complete reorganization of a company under a different name,

in fact the organization of an entirely new corporation out of the old, might be as to the rights of the policy-holder, or a stockholder in the old company, who did not consent to such reorganization.

It is plain from §§27 and 28 of the act approved February 10, 1899, that it was not the intention of the legislature that there should be necessarily a new company formed, but that the old company, without changing its corporate identity, or in any manner affecting its corporate rights or liability, might, by complying with certain requirements, be authorized to do business in the future in accordance with the provisions contained in that act. (Acts 1899, p. 40). So far as the pleading shows, the company is the same as before the reorganization, and is not a new corporation which has taken the place of an old one that has ceased to exist.

The demurrers were properly sustained.

Judgment affirmed.