Robison *v.* Wolf.

---

## ROBISON *v.* WOLF, RECEIVER.

[No. 3,284. Filed November 26, 1901.]

EVIDENCE.—*Receipts.—Contradiction.—Insurance.*—A receipt given for an insurance premium may be contradicted by parol evidence showing that only a part of the premium was paid. *pp. 686, 687.*

INSURANCE.—*Special Contracts.—Renewal Dividends.*—A contract whereby a mutual accident insurance company in consideration of the payment of one full annual premium selects insured as one of 500 policy holders, each to be insured for a like amount, to participate in a special renewal dividend on all insurance written in the State for a period of ten years, such dividend to be applied towards the payment of the ensuing year's premium, is void. *pp. 687-693.*

SAME.—*Contracts.—Invalidity.—Estoppel.*—The receiver of a mutual accident insurance company will not be estopped from setting up the invalidity of a contract entered into by the company and a selected member on the ground that it was fully executed, where the contract is forbidden by statute or is contrary to public policy. *p. 693.*

Robison *v.* Wolf.

RECEIVERS.—*Authority to Maintain Action.—Insurance.*—An aver-
ment in a complaint in an action by the receiver of an insurance
company to collect a premium due the company, that the court en-
tered in vacation an order empowering, authorizing and directing the
receiver to collect all claims and debts then due and that might be-
come due said company, and to bring in his own name, as receiver,
any and all suits to collect the same, sufficiently shows the authority
of the receiver to maintain the action.   *p. 693.*
PLEADING.—*Appeal and Error.—Presumption.*—Where in an action.
to recover an insurance premium the complaint averred a written
promise by defendant to pay the premium sued for, and the appli-
cation filed as an exhibit contains no promise to pay, but the com-
plaint shows facts from which an implied promise would arise, a
judgment for plaintiff will not be reversed, as the alleged defect
will be deemed to have been amended to conform to the proof.
*pp. 693, 694.*

From Marion Superior Court; *Vinson Carter,* Judge.

Action by George Wolf, receiver of the Globe Accident
Insurance Company, against Edward J. Robison for the
recovery of an insurance premium. From a judgment for
plaintiff, defendant appeals. *Affirmed.*

*C. F. Coffin* and *H. M. Dowling,* for appellant.
*E. A. Brown, O. H. Carson* and *J. C. Moore,* for appellee.

ROBY, J.—The appellee as receiver of the Globe Acci-
dent Insurance Company of Indianapolis brought this ac-
tion to recover the annual premium alleged to be due and
unpaid upon policy number 24,803, issued to appellant.
A demurrer was overruled to the complaint and an answer
of general denial filed; a second paragraph of answer was
also filed, but its averments are not material at this time;
trial had, verdict and judgment for appellee for $5.25.

The evidence shows that the Globe Accident Insurance
Company was organized January 30, 1892, under the act
of March 9, 1883, and acts amendatory thereto.   §§4897,
4898, 4900, 4901, 4903, Burns 1901.   Its articles of asso-
ciation are in part as follows:   "Such indemnity and bene-
fit to be provided by assessment paid by the members, *each
of whom shall,* during the continuance of his certificate of

membership, *be a full member of this corporation and entitled to all its rights and privileges.* No indemnity nor benefit shall exceed the amount provided in the member's certificate of membership nor the amount of our assessment of the membership existing at the time of the injury; and no *member nor any beneficiary of any members,* shall under any circumstances have any right, title or interest to or in any funds of this corporation in excess of said amount. * * * The funds of this corporation shall be provided for by admission fees, dues and assessments. And no part of the expense fund shall be used to pay death or disability claims and *no part of the indemnity* fund shall be used to pay expenses."

In accordance with the power conferred by section two of the act, certain by-laws were adopted by the company. These by-laws are in part as follows: "The object of this company is to insure its members against bodily injury caused solely by external, violent and accidental means and to pay them or their beneficiaries, within the limitations of their contracts of insurance, indemnities or benefits to be provided by assessments equitably levied upon the entire membership. * * * Said directors shall receive no salary or other compensation for their services, but shall serve gratuitously as a favor to the other members. * * * Every member shall be a full member of this company, *entitled to all its rights and privileges as fully and completely as any other member. Each member* shall be an *advisory agent* of this corporation, whose duty it shall be to fully report to the president *all information coming to his attention of value to the company,* and especially all information of every character whatsoever concerning any injury received by insured members of the company. * * * This company shall be charged with and responsible for only the cash actually received by it; and nothing but the actual cash shall be considered payment."

On November 23, 1895, appellant made his application

for membership in said company. The application was "filled out" by the applicant. Most of the matter stated therein is not relevant at this time. Parts of the application that may be so regarded are as follows: "24,803-10-23-E. Accepted. Policy No. 24,803 Agency of Pd. 11-27-95 W. A. W. Application for $10,000 S. G. C. Policy. Amt. of premium? 25. Payable Annually? To the Globe Accident Insurance Company."

On November 25th a policy was issued parts of which are as follows: "No. 24,803. Maximum Weekly Indemnity $50 Per Week. Maximum Death Benefit $10,000. The Globe Accident Insurance Company of Indianapolis. In consideration of the warranties contained in the application for this Policy, and of the *annual* Premium of $25, has accepted. *Edward J. Robison.*" On the same day the policy was issued applicant paid the company $25 and received its receipt therefor. On November 25, 1896, he also paid $25 to it receiving a receipt therefor. On November 24, 1897, he paid to it $19.75,. and received a receipt for $25 in terms as follows: "Renewal Term Receipt. Policy No. 24,803. Renewal Receipt No. 1,505. Maximum Death Benefit $10,000. Amount of Premium $25. The Globe Accident Insurance Company of Indianapolis, Ind., acknowledges the receipt from Edward J. Robison of $25 and hereby continues in force Policy No. 24,803 issued by the Globe Accident Insurance Company of Indianapolis, Ind., from 12 o'clock noon of the date hereof to 12 o'clock noon of the 25th day of November, 1898. Dated this 24th day of November, 1897. W. A. Walker, Secretary, Per Brown, Cashier. Amt. of premium $25. Renewal Com. 5.25. Cash Received $19.75."

It was found by the jury that appellant had been insured by virtue of such payment, during the year ending November 25, 1898. If the entire premium were unpaid, and no receipt had been executed, there could be no doubt of the receiver's right under a proper order of the court appointing

him to recover it. The fact that a partial payment has been made thereon cannot affect his right to collect the unpaid portion. The effect of a receipt is to put the burden of proof upon the person denying its correctness, but it may be explained, qualified or contradicted by parol. *Ohio, etc., R. Co.* v. *Crumbo,* 4 Ind. App. 456; *Moore* v. *Korty,* 11 Ind. 341.

There is no dispute as to the facts in this case. Appellant testified to a cash payment of $19.75. Under the bylaws, to the terms of which he agreed to conform when he became a member, "nothing but the actual cash shall be considered payment." There is no evidence that the residue of the annual premium has been paid, but as equivalent thereto the following claim is made in appellant's brief: "On the —— day of November, 1897, the company paid to the appellant the sum of $5.25 as his share of the renewal fund. The appellant thereupon paid this sum back to the company in full discharge of all payments due upon his third year premium of $25, $19.75 of which had already been paid; and the accounts between insurer and insured were balanced. Of course this circuitous method of double payment was dispensed with and a credit entered on the company's books effected the same object. But the result was the same as though an actual transfer of funds had been made. When appellant accepted the special contract which provided for this credit, he thereby constituted the company his agent to receive this expected "dividend" and, in its capacity as his agent, to repay it to the company as the insurer, and thus discharge his debt."

In order to avoid confusion it is well to analyze the foregoing. It amounts to this, that the Globe Company had collected $5.25 for appellant from some one, and treated such amount as cash applied. This brings us to the root of the trouble, and the further inquiry is as to how the company became possessed of appellant's money? From whom it was collected? When, and what for? On the

same date of the policy and as part of the same transaction the following writing was made: "Special Globe Combination Contract. (Limited to 500.) The Globe Accident Insurance Company, of Indianapolis, Indiana, in consideration of Edward J. Robison, of Indianapolis, Indiana, having paid a full annual premium of $25 on a policy of $10,-000 insurance in said company, numbered 24,803, hereby selects said Edward J. Robison as one of 500 policy holders, each to be insured for a like amount, to participate in a special renewal dividend, consisting of five per cent. of the gross premiums on all insurance in force written in the State of Indiana for ten years from November 1, 1895, exclusive of the first year premiums, on which, in the aggregate, a full annual premium has been paid within the twelve months preceding the distribution of said renewal dividend, according to the following terms and conditions; at the end of each calendar year, after the first, while the said policy remains in force, the said company agrees to credit the said Edward J. Robison with his pro rata share of said renewal dividend, according to the number of said policy holders whose policies are then in force. Said credit to be applied towards the payment of the ensuing year's premium upon said policy No. 24,803, beginning with the third; but no such annual credit shall be given in excess of the amount necessary to pay the annual premium on said policy. In witness whereof the Globe Insurance Company has caused this contract to be signed by its president and secretary at its office in the city of Indianapolis, Indiana, this 25th day of November, 1895." By the terms of this instrument appellant became one of not more than 500 persons for whose benefit five per cent. of the gross premiums on all insurance in force written in Indiana for ten years was to be collected. No provision is made in the statute, articles of incorporation, or by-laws, for the creation of such a body nor the selection of its members. The consideration given by appellant is recited in the "combina-

tion contract" as follows:  "In consideration of Edward J. Robison, of Indianapolis, Indiana, having paid a full annual premium of $25 on a policy of $10,000 insurance in said company."  In other words, the stated consideration is the payment of the regular premium for one year on the policy for which he had applied.  In return for such inconvenience he was thereafter to have his insurance for less than it was worth, or for nothing.

In order to give appellant the benefit of the fullest statement possible, the following further extract is made from the able brief filed in his behalf:  "In the present case, the officers holding powers of attorney for all the members, pursued a method for advancing the interests of the company and all its policy holders by *selecting a limited number from the membership* who were to be given a special inducement to obtain business for the company.  It is undeniable that the corporation could have authorized certain members as its agents to secure new policy holders and have agreed to pay these agents a fixed or varying compensation, but serious objections might exist to such a plan, which in the minds of reasonable men would outweigh its advantages.  Members might not wish to be known as insurance agents. Those employed in one line of business, as a lawyer or physician or clerk, might not be ambitious to figure as the regular agent of any insurance company."  The difficulties with the statement are:   (1)  No agreement to advance the interests of the company in the method stated is shown; (2) no evidence was introduced tending to show that any services of any kind were contemplated, purposed, or rendered; (3) as a member of the company, appellant had undertaken to do all that is claimed he was to do in this instance, and he had thereby become an "advisory agent" of the company; (4) it is not shown that the officers pursued such method to "advance the interests of the company." "The minute book" of the company was not turned over to

the receiver. It is "lost" and nothing was produced in the court to take its place. It is not possible that in the good faith exercise of the powers conferred upon them, the directors bound their company to pay five per cent. of the gross proceeds of its business in Indiana, for eight years, as agency commissions, without any regard to the amount, kind, or value of service rendered, without any stipulation or agreement as to what service should be rendered, and without making any record thereof. The legitimate organization of a class and fund of such magnitude and importance as is contemplated by the instrument under consideration could not be secret, and yet, so far as the evidence shows, no policy holder or member not a party to the arrangement had any means of knowing anything about it. Neither is it shown how the selection of persons to receive the benefits of this special arrangement was made. It would tax human credulity too much to accept the appellant's theory of the transaction.

The articles of association, the by-laws and the law of the State of Indiana attribute the same qualities and purposes to a mutual insurance company. The word mutual in itself denotes a common interest.

The incorporators declared that "every member shall be a full member of this company and entitled to all its rights and privileges as fully as any other member". "It is necessary and equitable that each person who gets insured in such company or society should become subject to the same obligations toward his associates that he requires from them toward himself." Joyce on Ins., §§316-340. The underlying idea is that of absolute equality in the burden of providing the funds pro rata to benefits to be received and the equality of benefits to be received pro rata to the burden borne by those contributing to the fund. Niblack on Acc. Ins., §17; *Fullenwider* v. *Royal League,* 73 Ill. App. 321; *Smith* v. *Hunterdon, etc., Ins. Co.,* 41 N. J. Eq. 473, 4 Atl. 652; *Carlton* v. *Southern Ins. Co.,* 72 Ga. 371;

*Clevenger* v. *Mutual Life Ins. Co.,* 2 Dak. 114, 3 N. W. 313.

The "combination contract" does not accord with the theory of equality among all the members of the company. It is one step in a plan, as it shows by its terms, which if fully carried out would give a $10,000 policy to each of 500 persons, after the payment of two regular premiums thereon, for nothing. Should five per cent. of all the premiums from business in Indiana not be sufficient to meet the necessary charge for carrying this insurance, then the regular premium was to be reduced as the amount so received would permit. It follows that the persons not parties to this arrangement, who became members of the company, must pay in addition to the cost of their own insurance an additional five per cent. for the benefit of others, the appellant and his associates receiving the benefit, and other members bearing the burdens. The plan is marked not by mutuality but by inequality and unfairness. Its novelty lies not in purpose but in detail. Such devices are treated but one way by the courts. A conservative text writer describes them as follows: "The various ways in which stockholders are generally defrauded out of their legal rights in a corporation are described in subsequent sections of this chapter. These, however, are the older and more easily remedied wrongs. The principles of law governing them are known to those who contemplate such frauds. Consequently, new plans and methods of circumventing the law are being constantly devised. There is a continual contest between the courts in branding certain acts as frauds and the unscrupulous corporation officers in forming new and unknown methods of defrauding the corporation and stockholders." Cook on Corp., §647.

When courts cease to search out and condemn attempts of this sort toward individual aggrandizement, the time will then have arrived when the beneficial results of combined capital and effort are no longer possible. No busi-

ness and no class of companies deserve such careful super-
vision from the State as that of insurance and those who
conduct it.    Its beneficiaries are in a majority of instances
women and children dependent for support upon funds
which intelligent foresight has provided for them.    Pay-
ment is to be made in the future.    The collection of funds
with which to pay is constantly taking place.    That the
utmost fidelity is demanded from those who manage such
affairs cannot be doubted.    Their duties are more than
private; the entire public is directly or indirectly con-
cerned that they be not disregarded.    The act of 1883 con-
tains a further section as follows:    "(10)  Whenever any
such corporation or association shall fail to make its annual
statement to the Auditor of State before the 31st day of
August, or if in the opinion of the Auditor of State it is
conducting its business fraudulently, or not in compliance
with this act, or is not carrying out its contract with the
members in good faith, then it shall be the duty of the
Auditor of State to communicate the fact to the Attorney-
General, who may thereupon commence proceedings, by
writ of quo warranto, against such corporation, association or
society, requiring it to show cause why its officers should not
be removed or its business closed, and the court or judge, as
the case may be, shall thereupon hear the allegations and
proofs of the respective parties; and if it shall appear to
the satisfaction of such judge or court that the officers of
such corporation, association or society, or any one or more
of them, have been guilty of any material irregularity or
violation of law, to the injury of such corporation, associa-
tion or society, the said court or judge shall decree a removal
from office of the guilty party or parties, and substitute
suitable persons to serve until the regular annual election,
or until a successor is regularly chosen; or if it shall ap-
pear to the said judge or court that the interest of the
public so require, the said judge or court shall decree a
dissolution of such corporation, association or society, and
a distribution of its effects."    §4906 Burns 1901.

It would be very strange if the courts were not permitted to take into account considerations of public policy when called upon to enforce contracts for the making of which the company's officers might be removed or its business wound up as a matter of public policy.

The contract relied upon by appellant is inimical to the purpose for which the Globe Accident Insurance Company was chartered. It is illegal in that it provides for the taking of money wrongfully, and is within the terms of that section of the statute last cited. The contract being void, it does not furnish any basis for the claim made by appellant that the full premium of $25 had been paid in cash. $5.25 remains unpaid and the judgment of the superior court of Marion county was therefore right.

It is further contended that the "combination contract" was fully executed, and that the company and its receiver are therefore estopped from setting up its invalidity. The doctrine does not apply to contracts forbidden by statute or contrary to public policy. *Franklin Nat. Bank* v. *Whitehead,* 149 Ind. 560, 39 L. R. A. 725, 63 Am. St. 302.

It is also asserted that appellee receiver does not show in his complaint that he was duly authorized to bring the action. The averment is as follows: "That on the 2nd of August, 1898, agreeable to the prayer of a petition filed by said receiver, the judge of said superior court entered in vacation an order empowering, authorizing, and directing this receiver to collect all claims and debts then due and that might become due said company, and to bring in his own name as receiver any and all suits to collect the same." The averment is held to be sufficient. *Taylor* v. *Canaday,* 155 Ind. 671.

The complaint averred a written promise by appellant to pay the premium sued for. The application was filed as an exhibit. The point is made that the terms of the exhibit control, and that no promise to pay is contained in the application. The proposition made by appellant was

that a policy be issued to him. The premium was stated as $25, payable annually. The implication would seem to be that if the policy was issued the assured would pay the premium. No precise form of words is necessary to consti-tute an express promise. That which was understood by one party and accepted by the other as being an engagement to pay is sufficient. The complaint further shows facts from which an implied promise would arise and recovery might have been had upon that. *Palmer* v. *Miller,* 19 Ind. App. 624; *Forester* v. *Forester,* 10 Ind. App. 680. The alleged defect might in any event have been amended to conform to the proof, and will be so treated upon appeal.

The facts in this case are not the facts upon which *Mul-ler* v. *State Life Ins. Co.,* 27 Ind. App. 45, was decided, and the conclusion reached is not in conflict with the de-cision therein. Judgment affirmed.

Comstock, C. J., Black and Robinson, J. J., concur, Henley and Wiley, J. J., not participating.