CLARK et al. v. WHEELING STEEL WORKS.

(Circuit Court of Appeals, Third Circuit. January 3, 1893.)

No. 27.

1. CONTRACTS—ENTIRE AND SEPARABLE—FUTURE DELIVERY IN INSTALLMENTS.
    A contract for future delivery of certain quantities of steel slabs and billets in fixed installments at stipulated times, payment to be made after each delivery, is entire, and not separable. Norrington v. Wright, 6 Sup. Ct. Rep. 12, 115 U. S. 189, followed.

**2. SALE—DELIVERY IN INSTALLMENTS—ACCEPTANCE OF A PART—RESCISSION.**
Plaintiff sold to defendant 5,000 tons steel billets and slabs; "material to be good, merchantable steel, suitable for manufacturing purposes," to be delivered in fixed installments, and shipped on the orders of defendant; price, $30.75 per ton. Defendant ordered certain shipments to a third party, who complained that the steel was defective. The useless slabs were replaced, and the slightly defective ones made good, at the plaintiff's cost, and these shipments were subsequently paid for, but the defendant refused to receive further deliveries. The price of steel had fallen to $25.25 per ton. *Held*, that the defendant had no right to rescind, and was liable for breach of the contract. Norrington v. Wright, 6 Sup. Ct. Rep. 12, 115 U. S. 189, distinguished.

**3. SAME—UNREASONABLE DELAY—QUESTION FOR JURY.**
The question whether the defendants had delayed for an unreasonable time in asserting any right which they may have had to rescind the contract was properly submitted to the jury.

In Error to the Circuit Court of the United States for the Eastern District of Pennsylvania.

At Law. Action by the Wheeling Steel Works against Edward W. Clark, Sabin W. Colton, Jr., Edward W. Clark, Jr., Edward E. Denniston, J. Milton Colton, and C. Howard Clark, trading as E. W. Clark & Co., for breach of contract. Verdict and judgment for plaintiff. Defendant brings error. Affirmed.

Richard C. Dale, (Samuel Dickson, on the brief,) for plaintiffs in error.

John M. Gest and Henry M. Russell, (John Sparhawk, Jr., on the brief,) for defendant in error.

Before DALLAS, Circuit Judge, and WALES and BUFFINGTON, District Judges.

WALES, District Judge. On June 26, 1890, the parties to this action entered into a written contract on the following terms and stipulations: The Wheeling Steel Works sold to Clark & Co. 5,000 tons of soft Bessemer steel billets and slabs; material to be good, merchantable steel, suitable for manufacturing purposes, to be delivered at the rate of 1,000 tons per month from August to December, inclusive; price, $30.75 per ton; payment, cash between the 15th and 20th of the month next after delivery; steel to be shipped on the orders of Clark & Co. On August 29, 1890, the parties agreed to an extension of the time of deliveries of the steel as follows: 500 tons to be delivered in September, 1,500 tons in October, 1,500 tons in November, and 1,500 tons in December. On September 2, 1890, Clark & Co. sold 500 tons of the steel to the Lukens Iron & Steel Company, at $30 per ton; and on October 2, 1890, they sold to the same company 1,500 more tons at $29.50 per ton. The Wheeling Steel Company, on the orders of Clark & Co., accompanied by specifications as to size and weight of billets, shipped to the Lukens Iron & Steel Company about 1,512 tons of steel, as follows: 600 tons in September, 654 tons in October, and the balance in November. On November 12, 1890, by a supplementary contract, the Wheeling Steel Company, in consideration of the payment to them of the sum of $1,500 by Clark & Co., extended the time for the delivery of 3,000

tons of the steel over the first three months of the year, 1891, with an option to Clark & Co. to have a still further extension over the three succeeding months of April, May, and June by the payment of 25 cents per ton. The Wheeling Steel Company could only ship the material on the orders of Clark & Co., giving the directions as to size and weight of billets; but on December 18, 1890, the former company made a formal tender of the balance of the 2,000 tons deliverable in 1890, and again, in January, February, and March, 1891, made a like tender of the quantity due in each of those months, respectively, all of which offers were declined by Clark & Co., whereupon this action was begun to recover damages from Clark & Co. for breach of contract. At the trial the defendants, Clark & Co., justified their refusal to accept further deliveries of the steel on the ground that that which had already been received was not "good, merchantable steel, suitable for manufacturing purposes." This was the main issue of fact before the jury, and was made the turning question of the case. It was admitted that the quality of the steel was right, but that many of the billets were so defective on account of cracks, flaws, or seams on their surface that they could not be rolled into smooth and perfect sheets. In consequence of complaints of this character which had been made to the plaintiff, the Wheeling Steel Works, the latter, early in December, 1890, sent two of its officers or agents to Coatsville, to inspect the steel which had been delivered to the Lukens Iron & Steel Company, who found two or three slabs which were so defective as to be useless for rolling, but that the other slabs complained of could be easily made good by having their surface defects chipped out. It was then understood and agreed that the useless slabs should be replaced or returned, and the slightly defective ones made good, at the cost of the plaintiff. This agreement appears to have been carried into effect, for on the final settlement between the parties to the contract of June 26, 1890, for the steel actually delivered and used, the sum of $45,600 was paid to the plaintiff; that being the contract price for the 1,512 tons delivered, after deducting the price of the steel returned and the cost of chipping. Prior to this settlement, however, the defendant, on January 2, 1891, notified the plaintiff that on account of the defective steel theretofore delivered no further deliveries would be received under the contract, which they declared to be "cancelled." It was also in evidence that the price of steel, in December, 1890, had fallen to $25.25 per ton. In the course of its charge to the jury the court said:

"The questions of fact are for your determination. The first question for consideration is, was the steel delivered by the plaintiff to the Lukens Iron & Steel Company unmarketable, unmerchantable, and unsuitable for manufacturing purposes? In solving this question you should take into consideration all the evidence in the case, in connection with the acts and conduct of the parties. The alleged defects in the steel were structural or mechanical defects in the formation of the billets or slabs, which have been explained to you by the witnesses. What was the extent of these defects? Did they pervade the mass of the slabs to any considerable extent? A few defective slabs occasionally occurring here and there in the mass of steel would not make the steel as a whole unmerchantable if the great mass of slabs and billets were free from defects. What the facts were in regard to these defects it is for you to say upon a consideration of the evidence. * * * But there are other material ques-

tions in the case to which I desire to call the attention of the jury, and this, I think, can best be done by here answering the plaintiff's prayers for instructions. I will proceed, then, to answer specifically the plaintiff's points or prayers, so far as the points seem to me to be warranted by the evidence, and not covered by the general instructions given."

"The plaintiff's first point is this: Rescission must be of the entire contract, or not at all. If the jury find that the fifteen hundred and twelve tons of steel delivered by the plaintiff to the defendants were retained and used by them after knowledge of the alleged defects, the defendants could not afterwards rescind the contract. Answer of the Court: I affirm that point."

(4) "If the plaintiffs, in their performance of the contract, delivered to the defendants defective steel, the defendants had the right to do either of two things, but not both; that is, they had the right to reject and return the steel delivered, and rescind the entire contract, or else retain the steel delivered, and claim and receive compensation for the defects. If they chose the latter course, and retained, after discovering the defects, the steel already delivered, they were bound by their choice, and could not rescind the contract on account of those defects. Answer of the Court: This point is affirmed if the jury find that after full discovery of the defects in the steel delivered the defendants elected to retain the steel."

The jury returned a verdict in favor of the plaintiff for $12,990.37, and, the court having overruled a motion for an arrest of judgment and a motion for a new trial, made in behalf of the defendants, the latter took this writ of error, assigning the same exception to each of the foregoing special instructions, to wit: "That retention and use of the steel is made conclusive evidence of acceptance as a good delivery under the contract; and that facts are substituted, from which acceptance may be found, as conclusive evidence of acceptance." The reasoning in support of this objection is that the mere retention and use of the steel did not necessarily import an acceptance of it as a good delivery under the contract, because the steel had been received and used under qualifying circumstances; and the instructions were therefore erroneous on account of the omission to bring these circumstances directly to the notice of the jury, to enable them to decide whether there had been such an acceptance by the defendants as deprived them of the right of rescission. To show the distinction between acceptance and a qualified retention and use, the counsel for plaintiff in error relied on Norrington v. Wright, 115 U. S. 189, 6 Sup. Ct. Rep. 12, which settled the law as to the construction of contracts for successive monthly deliveries. Such contracts are declared to be entire, and not severable, so that the default of the seller in the delivery of one month's installment, according to the terms of the contract, is a breach upon his part of the whole contract, and he cannot, therefore, maintain an action upon the contract which he was the first to break. The facts in that case were briefly these: The plaintiff had contracted to deliver to the defendants 5,000 tons of railroad iron, to be shipped from one or more European ports to Philadelphia at the rate of 1,000 tons per month, beginning in February. The defendants had accepted and paid for a small cargo of 400 tons, which had been shipped in February, in ignorance of the fact that the shipments made in February and March were in less quantities than the contract called for. **Mr. Justice Gray, in delivering the opinion of the court, said:**

v.53F.no.4—32

"His (the plaintiff's) failure to fulfill the contract on his part in respect to these first two installments justified the defendants in rescinding the whole contract, provided they distinctly and seasonably asserted the right of rescission. * * * Their previous acceptance of the single cargo of four hundred tons shipped in February was no waiver of their right, because it took place without notice or means of knowledge that the stipulated quantity had not been shipped in February."

But the facts on which the decision in Norrington v. Wright were made were just the reverse of the facts in the present case. Here the defects in the steel delivered to the Lukens Company were patent and visible; they were on the surface, and unconcealed; and neither Clark & Co. or their vendees pretended at any time to be ignorant of them. Had the defendants retained and used any portion of the steel without notice or knowledge of the defects, and immediately, on discovering them, had refused further deliveries, then the ruling in Norrington v. Wright would be applicable; but it would seem from the record that they continued to receive and use the steel up to December, 1890, and finally paid the full contract price for what they had used. If the defendants in Norrington v. Wright had retained and used the railroad iron delivered to them after they had discovered the seller's failure to ship the stipulated quantities in February and March, they would not have been justified in rescinding their contract. Norrington v. Wright, therefore, as far as it concerns the distinction contended for, decides nothing more than that the acceptance by the buyer of a portion of material contracted for and to be delivered by monthly installments, in ignorance of the seller's prior breach of the contract, will not deprive the buyer of the right to rescind the contract as to future deliveries as soon as he discovers the seller's default; nor is it by any means clear that the substitution of the words "retention and use" for the word "acceptance" in the opinion of the court would materially alter the meaning or effect of its decision. It was in conformity to that decision that, in answer to the defendants' request, the court below charged the jury that, if "the steel billets and slabs delivered by the plaintiff to the Lukens Iron & Steel Company under their contract with the defendants were not at the time of the delivery good, marketable steel, suitable for manufacturing purposes, then the defendants, upon discovering the facts, were entitled to rescind the contract, and to decline to accept further deliveries from the plaintiff." It does not appear, therefore, that the instructions which are objected to depart in any respect from what was said by the court in Norrington v. Wright. On the other hand, direct authority may be found to support them in Lyon v. Bertram, 20 How. 149. In that case the court refers to a note to Cutter v. Powell, in 2 Smith, Leading Cases, 1212, in which the annotator states the law to be settled that, where an article is warranted, and the warranty is not complied with, the vendee has the choice of three courses, any one of which he may pursue: (1) He may refuse to receive the article at all; (2) he may receive it, and bring a cross action for the breach of the warranty; (3) he may, without bringing a cross action, use the breach of warranty in reduction of damages in an action brought by the vendor for the price. In commenting on this note

the court said that, while the first proposition is a matter of dispute, there is none in respect to the conclusion that the purchaser who has "received and used the article," and derived a benefit from it, cannot then rescind the contract.

The court below further instructed the jury that "any right which the defendants may have had to rescind the contract in suit was lost by the defendants if the jury find that they delayed for an unreasonable time in asserting it." In Morgan v. McKee, 77 Pa. St. 228, the court held that the seller's default in making one of the stipulated deliveries of the material bought gave the buyer the right to rescind the whole contract, but that the right must be exercised promptly, and that any undue delay would be regarded as a waiver. What is a reasonable time, where the facts are undisputed, is a question of law to be determined by the court. When the article is a subject of speculation, and the market price varies with the demand and supply, if the purchasers, instead of rescinding the contract as soon as it is broken, or within a reasonable time thereafter, take the chance of a rise in the price, it is but equitable and just that they should be treated as having waived the right to rescind. In that case, a month's delay, when the delivery was to be monthly, was regarded as unreasonable. In the present case the question of promptitude or of undue delay in exercising the right of rescission by the defendants, if they had any, was left entirely for the determination of the jury. In view of all the facts disclosed by the record, and of the law applicable to them as above stated, further discussion would be needless. The conclusion arrived at is that the whole case was fairly left to the jury, and that they could not have been misled, either by the general charge or by the special instructions of the court. The issues of fact were distinctly presented, and the questions of law were correctly decided by the circuit court, and its judgment is therefore affirmed.