HARDING, WHITMAN & CO. v. YORK KNITTING MILLS.

(Circuit Court, M. D. Pennsylvania. November 3, 1905.)

No. 29, June ———, 1905.

1. TENDER—PLEADING.

A plea of tender must state how and to whom it was made, as well as the amount tendered, in order that the court may see that as a matter of law the tender was good.

[Ed. Note.—For cases in point, see vol. 45, Cent. Dig. Tender, § 69.]

2. INTEREST—ACCOUNTS—DEFINITE TERM OF CREDIT.

While the general rule is that interest is not recoverable as a matter of course on open accounts, a distinction is made where goods are sold on a definite term of credit, in which case interest runs from the date when the account becomes due, and unless there is a dispute as to the amount, or there are deductions or discounts to be adjusted and settled, a demand is not necessary, but the account is presumed to be correct, and assumes the character of a liquidated or settled account on which interest becomes due.

3. COURTS—UNITED STATES COURTS—PROCEDURE—EVIDENCE—PAROL EVIDENCE TO VARY WRITING.

Where a contract is in writing and complete in itself, its terms cannot be added to by parol, in an action at law in a federal court.

[Ed. Note.—Conformity of practice in common-law actions in federal courts to state practice, see notes to O'Connell v. Reed, 5 C. C. A. 594, Nederland Life Ins. Co. v. Hall, 27 C. C. A. 392.]

4. SALES—RIGHT OF RESCISSION—ACCEPTANCE OF PART PERFORMANCE.

Where defendant contracted for the purchase of a large quantity of yarn from plaintiffs, to be manufactured and delivered in weekly installments, and accepted and used a number of shipments, although making complaint about the quality, which it claimed was not that required by the contract, it could not thereafter rescind the contract as to yarn undelivered because of such alleged breach.

5. CONTRACTS—ACTION—AFFIDAVIT OF DEFENSE.

An affidavit of defense in an action on a contract, alleging a cancellation of the contract by consent of plaintiffs in writing, is insufficient, unless it sets out such writing, so that the court can determine its legal effect.

6. PLEADING—AFFIDAVIT OF DEFENSE—STATE PRACTICE—JUDGMENT FOR PART OF PLAINTIFF'S CLAIMS.

On a rule for judgment for want of a sufficient affidavit of defense, the state practice will be followed, allowing judgment for such portions of the plaintiff's claim as to which the affidavit is found insufficient, without prejudice to the right to present for the balance of the claim.

At Law. Rule for judgment for want of a sufficient affidavit of defense.

Clement B. Wood, for plaintiff.
Henry C. Niles, for defendant.

ARCHBALD, District Judge.   It is admitted that the plaintiffs furnished to the defendants cotton yarn to the extent of $4,784.29, which has not been paid for, for which at least the plaintiffs are entitled to judgment.   According to the dates of delivery and terms of credit set out in the statement, $1,582.56 of this was due November 10, 1904, $2,-561.10 was due December 10, 1904, and $730.63 was due February 10, 1905, making January 20, 1905, as averred by the plaintiffs, as the average date of maturity, from which time interest is claimed.   The defendants deny liability for interest, for the reason, as stated in their affidavit, that "on March 13, 1905, they tendered payment for all the said several sums of money to the plaintiffs, which the plaintiffs declined to accept." The averment of tender so made is clearly insufficient; the difficulty with it being that it gives no facts.   As it stands, it is a mere conclusion, like an averment of payment, which, without more, is bad.   Snyder v. Powers, 3 Walk. (Pa.) 277; McCracken v. First Presby. Congr., 111 Pa. 106, 2 Atl. 94.   Tender is a mixed question, and the facts should be given in order that the court may see that as a matter of law it was good, to judge of which it is necessary to state how and to whom it was made, as well as the amount tendered, without which this cannot be known.

But, however deficient in this respect the defendants' affidavit may be, interest is not to be allowed unless it appears that the plaintiffs are entitled to it.   Interest is not a matter of course on open accounts, until they have been liquidated or settled.   16 Am. & Eng. Encycl. Law (2d Ed.) 1017.   This is the prevailing rule, and is in force in Pennsylvania (McClintock's Appeal, 29 Pa. 361), except that here, by long-established usage, interest is chargeable in any event on a running account after six months.   Adams v. Palmer, 30 Pa. 346.   A distinction seems to be made, however, where goods are sold on a definite term of credit.   Selleck v. French, 1 Conn. 32, 6 Am. Dec. 185, 1 Am. Lead. Cas. 500.   When that is the case, the debtor being in default after the term of credit has expired without payment, there would seem to be no good reason why he should not pay interest as compensation for withholding the price due.   Crawford v. Willing, 4 Dall. 286, 289, 1 L. Ed. 836; Obermyer v. Nichols, 6 Bin. 159, 162, 6 Am. Dec. 439; Eckert v. Wilson, 12 Serg. & R. 393, 398; Young v. Godbe, 15 Wall. 562, 565, 21 L. Ed. 250.   The only question is whether (as seems to be intimated in some of the cases) a demand is not necessary in order to give it the character of a settled or stated account and so meet the requirement that interest is only recoverable where there is a failure to pay a definite sum at a day fixed.   Kelsey v. Murphy, 30 Pa. 340.   Minard v. Beans, 64 Pa. 411; Richards v. Citizens' Nat. Gas Co., 130 Pa. 37, 18 Atl. 600. But, however that may be, where items of the account are in controversy, or there are deductions or discounts to be adjusted and settled, where, as here, the balance due is admitted, the necessity for making a demand or rendering a statement, by which, if not objected to within a reasonable time, the account is presumed to be correct and assumes the character of a liquidated or settled account on which interest becomes

due by virtue of that, is not apparent. In the account in suit, as averred in the statement, the bills for goods shipped each month were due on the 10th of the month succeeding, subject to certain discounts and allowances, the correctness of which as figured by the plaintiffs is not challenged. This may not entitle them to average the date of maturity as they claim; but it does entitle them to interest on each bill, the amount being undisputed, from the time it became due, having the right to expect payment at that time, and being compelled to resort to legal proceedings to obtain it.

The rest of the plaintiffs' claim is for a refusal to accept further deliveries. Four several written orders for yarn were given by the defendants and accepted by the plaintiffs, and these constituted the contracts between them. Three of these were dated the same day, July 16, 1904, of which two were accepted July 18th, and the third on August 9th, and there was also a subsequent order on September 8th accepted the next day. The yarn to be furnished on the first and last of these was to be from the Arlington Mills; on the second, from the Manomet Mills; and on the third, from "Mill No. 57," so called. On the order to be filled from the Manomet Mills it was specified that the yarn "must be as good as Arlington Mills yarn," and on the second Arlington Mills order, that it should be "like previous orders"; but on the "Mill No. 57" order nothing whatever of the kind was said. It is under this order[1] that the present controversy arises.

---

[1]Duplicate—Please sign and return.

Harding, Whitman & Co.,
Dry Goods Commission Merchants, Cotton Yarn Department.

Boston, Mass., Aug. 9th, '04.

No. 8,065.
York Knitting Mills Co., York, Pa.
    Dear Sirs: We have entered your order of July 16th, 1904.

| | |
|---|---|
| Your order No. | Mill No. 57. |
| Quantity | 50,000 lbs. Count. |
| Description | Carded on Cones. |
| | Proportion about 15,000 lbs. each 7s & 9½s, |
| | 10,000 lbs. 11s & 5,000 lbs. each 15s & 16s. |
| Price and Terms, | 2% 10th Prox. Freight paid to York. Basis 18c for 10s. |
| | Cones. |
| | 7's-17c, 9½s-18c, 15's-19¾c, 11's-18¼c, 18's-20½c. |
| Deliveries | 3000 lbs. weekly Sept. 20th. |
| | (Changed by customer to Oct. 1st.) |
| Shipping Directions | York, Pa. |
| Remarks | Please send specifications at once. |

    This sale subject usual allowance of 2% tare for cones and paper wrapping if shipped on Broadbent or Foster Cones 1% if shipped on Universal Cones.
        Yours very truly,                Harding, Whitman & Co.,
                                                By Geo. D. Follett.

    This is in accordance with our understanding.
                                York Knitting Mills Co.,
                                        Per Henry L. Field, Sec.
    If the production of the mill shall be curtailed during the time above mentioned by strikes, lockouts, or any unavoidable casualties, deliveries shall only be demanded proportionate to the production.

So far as the refusal to accept deliveries is based on an alleged agreement, outside of the order, that the yarn was to be of a quality equal to that which had been furnished from the same mill about a year previous, with which the plaintiffs failed to comply, it cannot be sustained. As already stated, the order and its acceptance constitute the contract, and being in writing, and complete in itself, the size, as well as the grade, of the yarn being admittedly indicated by the numbers given to it, it cannot be added to in this way by bringing in an omitted member by parol in an action at law in a federal court. This is too well established to need any extended citation of authorities; but De Witt v. Berry, 134 U. S. 306, 10 Sup. Ct. 536, 33 L. Ed. 896; Seitz v. Brewers Refrigerating Machine Co., 141 U. S. 510, 12 Sup. Ct. 46, 35 L. Ed. 837; Van Winkle v. Crowell, 146 U. S. 42, 13 Sup. Ct. 18, 36 L. Ed. 880; Pitcairn v. Hiss, 125 Fed. 113, 61 C. C. A. 657; and Dunn v. Mayo Mills, 134 Fed. 804, 67 C. C. A. 450—may be referred to as particularly apposite.

It is averred in the affidavit, however, that yarns shipped by the plaintiffs as 7's and 9½'s were not such in reality, although so designated, being "uneven in size, knotty, irregular, badly spun," and reeling "from No. 6 to No. 10," breaking the needles in the defendants' knitting machines, and not being able to be knit into hosiery that was merchantable, producing chiefly seconds, which could only be sold at a price 25 cents a dozen less than regular goods, and resulting in a much larger percentage of waste material than if such yarns had been of the quality claimed to have been contracted for. Also, that the plaintiffs were repeatedly notified of this by letter, and samples of the yarn, as well as specimens of the product, sent them; in response to which they advised the defendants that they had taken the matter up with the "Mill No. 57," by which the yarn was made, and finally assented in writing to a cancellation of the order as to No. 7's. Notwithstanding this, however, and although they had advised the defendants that the mill had discontinued spinning No. 7's, they insisted, as it is further averred, on the defendants receiving some 2,500 pounds more of the "unsatisfactory yarn"; whereupon, being obliged to go into the market and purchase other yarn in place of that which was to be furnished, the defendants canceled the contract and declined to receive any further deliveries.

It is not altogether clear, from what is so recited from the affidavit, whether the refusal of the defendants to take any more yarn is to be regarded as based on a failure in quality, judged according to the standard sought to be established by parol, or by taking the writing as it stands. But, assuming it to be the latter, the question is whether they had the right, at the time, to rescind the contract as they did. It may be conceded as a general rule, to which, however, there are many qualifications, that the breach of a contract by one party relieves the other from further obligation under it. This is certainly the case where the contract is entire, and either in time or in manner of performance is broken by either party at the outstart. Norrington v. Wright, 115 U. S. 188, 6 Sup. Ct. 12, 29 L. Ed. 366; Bowes v. Shand, L. R. 2 App. Cases, 455; Pope v. Porter, 102 N. Y. 366, 7 N. E. 304. Where the contract, however, is divisible, or, if indivisible, is made up of several distinct and similar acts to be separately and successively performed,

the right to rescind, according to some authorities, depends on whether the conduct of the party in default is such as evinces an intent to abandon the contract, or no longer to be bound thereby. Mersey Co. v. Naylor, L. R. 9 App. Cases, 444; Blackburn v. Reilly, 47 N. J. Law, 290, 1 Atl. 27, 54 Am. Rep. 159. More to our purpose, however, it is held, where a commodity has been sold, to be delivered in certain installments, the vendee is not relieved by defective deliveries which would ordinarily entitle him to rescind, if he has accepted and retained them with knowledge of the defects. It is different where the acceptance is without knowledge, if he elects to rescind within a reasonable time after he knows. Norrington v. Wright, 115 U. S. 188, 6 Sup. Ct. 12, 29 L. Ed. 366. But, saving this, the right is gone.

In Lyon v. Bertram, 20 How. 149, 15 L. Ed. 847, the plaintiffs sold a cargo of flour of about 2,000 barrels, the quality of which was to be determined by inspection, by which, also, the price was to be ascertained. On orders of the defendant some 200 barrels were delivered, which were paid for and consumed, notwithstanding which, because of some alleged failure in quality, the defendants subsequently refused to take any more. And it was held that by a partial acceptance the right to rescind was no longer open. "The purchaser cannot rescind the contract," as it is said, quoting from Perley v. Balch, 23 Pick. 283, 34 Am. Dec. 56, "and yet retain any portion of the consideration. The only exception is where the property is entirely worthless to both parties. * * * It must be nullified in toto, or not at all." Barnett v. Stanton, 2 Ala. 183, is also cited with approval where it is said:

"A contract cannot be rescinded without mutual consent, where circumstances have been so altered by a part execution, that the parties cannot be put in statu quo."

The case of Clark v. Wheeling Steel Works, 53 Fed. 494, 3 C. C. A. 600, decided by the Court of Appeals of this Circuit is to the same effect. The plaintiffs there made sale to the defendants of 5,000 tons of steel billets, to be delivered at a certain rate per month on orders of the defendants, upon which 1,512 tons were shipped to a designated party, and something paid upon account. The defendants having refused to accept any further deliveries, the plaintiffs tendered performance in accordance with the contract, and subsequently brought suit. The defendants at the trial justified their refusal on the ground that the billets which had been delivered were not "good, merchantable steel, suitable for manufacturing purposes," as required by the contract; many of them being so defective by reason of cracks, flaws and seams that they could not be rolled into smooth and perfect sheets. It appeared, however, that on complaint and investigation these had been made good by the plaintiffs, and that upon an adjustment between the parties the defendants had paid some $45,600 as the balance due for what they had had. In sustaining a recovery for the rest, it was held that if the steel was not what it should have been, and the defendants retained and used a portion of it without knowledge that it was defective, and, immediately upon discovering it, refused further deliveries, they were within their rights and could rescind; but that, if they retained and used it after that, they could not. So in Scott v. Kittanning Coal Co., 89 Pa. 231,

33 Am. Rep. 753, the plaintiffs agreed to deliver 5,000 tons of coal from a specified vein, within the period of a year, at not exceeding 6,000 tons a month. Some 18,000 tons were delivered and received, of which 10,-000 were paid for. Defendants claimed the right to rescind because of the fraudulent substitution of coal inferior to that which had been bargained for. But it was held that, while they might have refused to take such coal, having actually accepted and sold it, they could not rescind, because they could not restore it.

These cases rule the one in hand. Admittedly the defendants retained and used a quantity of the yarn after they knew of its defective character, and only undertook to rescind when the plaintiffs after some attempted adjustment proposed to go on. But this was too late. If they had ground for rescinding because the yarn was not what it should have been, they were called upon to assert it within a reasonable time after the defects were brought home by the opportunity for inspection (Spiegelberg v. Karr, 24 Pa. Super. Ct. 339), after which it was not available to them. They could, of course, refuse to accept inferior yarn, and compel the plaintiffs to furnish that which was up to the standard, and they would also be entitled to damages if this was not done. But the contract was entire, and could not be abrogated after there had been a partial, even though a defective, performance, of which the defendants knowingly accepted the benefit.

It is said, however, that according to the affidavit the plaintiffs, on complaint made to them and ineffectual attempts to remedy the difficulty, assented in writing to a cancellation of the contract, as to the yarn known as "7's," to which extent at least the defendants are not liable. But according to familiar rules, if any such writing was relied upon, a copy should have been exhibited (Erie City v. Butler, 120 Pa. 374, 14 Atl. 153), or its terms, at least, stated with such particularity that the court could determine whether the construction claimed for it was warranted (Willard v. Reed, 132 Pa. 5, 18 Atl. 921.) To allege broadly that the plaintiffs assented to the cancellation of the contract, without more, is a mere conclusion, which, the same as the allegation of tender considered above, is left without facts to sustain it, and is therefore ineffectual to prevent judgment. It follows that the plaintiffs are entitled to recovery by way of damages the loss which they experienced on a resale of the yarn which was manufactured and tendered to the defendants, but which the latter refused to receive.

Not so, however, as to yarn which was not manufactured, on which the profits which would have been made, if it had been, are claimed. The plaintiffs are admittedly mere factors or brokers, and the profits would belong to the manufacturers whom they represent; all that they themselves have lost being apparently their commissions. It is said that they sold del credere, and are therefore entitled to stand as principals, being liable over to the manufacturers for the price. But that is not shown by the record, and there is nothing in consequence to overcome the averment in the affidavit, that they are commission men, without more.

In accordance with the views so expressed, and following the course prescribed by the state law in such cases, judgment is directed to be en-

tered in favor of the plaintiffs for the following items of their claim, as to which the affidavit of defense is found to be insufficient, without prejudice to the right to proceed for the balance of the same (Act Pa. July 15, 1897 [P. L. 276]; Pierson v. Krause, 208 Pa. 115, 57 Atl. 348; International Contracting Co. v. McNichol [C. C.] 105 Fed. 553):