# OIL-WELL SUPPLY COMPANY *v.* WATSON ET AL.

[No. 20,861. Filed February 19, 1907. Rehearing denied June 6, 1907.]

1. APPEAL.—*New Trial.*—*Demurrer to Answers.*—*When Same Questions Presented.*—Where demurrers to the answers and the motion for a new trial present the same questions on appeal, a decision on the evidence suffices for both. p. 607.

2. SALES.—*Caveat Emptor.*—*Implied Warranties.*—Where the vendor, who is neither the manufacturer nor producer, sells the goods for all purposes to which they are adapted, and the goods

are in existence and capable of inspection, the maxim *caveat emptor* applies, in the absence of fraud, even though defects, not discoverable on examination, exist in the goods. p. 607.

3. SALES. — *Implied Warranties.* — *Special Fitness.* — Where the vendor sells and the vendee buys a specific chattel for a known purpose, for a full consideration, and inspection is either impracticable or no opportunity is afforded, there is an implied warranty that the chattel is fit for the purpose; and this is true regardless of whether the vendor was the manufacturer or a mere dealer, or whether the contract of sale was executory or executed. p. 608.

4. SAME.—*Specific Goods.*—*Implied Warranty.*—There is an implied warranty of soundness and serviceability in the sale, by a dealer, of a Fitler cable for drilling purposes, such goods having an established reputation for such qualities. p. 611.

5. SAME.—*Implied Warranties.*—*Opportunity for Inspection.*— *Cables.*—Where a vendor sold, for a specific purpose, a cable 1,400 feet long, wound in a coil and securely wrapped with burlap, the vendee did not have an opportunity to examine for defects, so as to make the maxim *caveat emptor* applicable to his purchase. p. 612.

6. PLEADING.—*Answers.*—*Sales.*—*Implied Warranties.*—*Reliance Upon.*—An answer stating that "relying on the presumed knowledge of the plaintiff of the required qualities of said cable from their exposing it for sale, and selling the same, they purchased it as herein stated," sufficiently shows that defendants relied upon the implied warranty of soundness and fitness, if such an allegation is necessary at all. p. 613.

7. SAME.—*Answers.*—*Sales.*—*Implied Warranties.*—*Breach.*—An answer showing that the cable purchased for a known purpose was not fit for the purpose, but was "wholly worthless," "rotten, weak, and would not sustain the strain and weight necessarily put on it in drilling such wells, and broke" when used, and that as soon as defendants discovered such condition they "returned" it to plaintiff and "notified" the vendor of the condition thereof, sufficiently shows the breach of the implied warranty of fitness and soundness, and that a test thereof was seasonably made, the whole transaction up to the filing of the answers occurring within five months from the time of the sale. p. 613.

8. SALES.—*Rescission.*—*Reasonable Time.*—*Question for Jury.*— In the absence of a contractual provision, a reasonable time is given to a person buying a specific article for a known purpose, no opportunity for inspection being given, in which to test such

article and, if unfit, to return same and rescind the contract; and whether the time proved is reasonable, is a question for the jury. p. 614.

9. PLEADING. — *Uncertainty.* — *Motion to Make More Specific.* — Where answers fail to set out the specific time that goods were ascertained to be unfit for the purpose for which they were bought, a motion to make more specific is the proper remedy. p. 615.

From Grant Circuit Court; *H. J. Paulus,* Judge.

Action by the Oil-Well Supply Company against **John C. Watson** and another. From a judgment for defendants, plaintiff appeals. Transferred from Appellate Court under §1337u Burns 1901, Acts 1901, p. 590. *Affirmed.*

*Abram Simmons* and *Frank C. Dailey,* for appellant.

*St. John & Charles* and *Williard B. Gemmill,* for appellees.

HADLEY, J.—Appellant is a corporation and a dealer in supplies for drilling oil-and gas-wells, located at Marion. Appellees are partners engaged in drilling oil-and gas-wells in the vicinity. On June 3, 1904, appellees purchased from appellant a two-inch Fitler cable, 1,400 feet long, and weighing 2,010 pounds. Appellees were acquainted with the Fitler cable and inquired for that make. They had been engaged in the vicinity, as drillers, for several years, which was known to appellant's superintendent, who made the sale. Two-inch cables were used in that vicinity for no purposes but drilling and for pulling casings. The cable when purchased was wrapped, both the rope and the coiled package, in burlap, just as it was when it left the factory in Philadelphia, a few days before, and neither appellant nor appellees had any opportunity to examine or inspect the quality of the cable before the purchase. There was no practicable way of inspection, or of testing its strength and quality, but by attaching the drill to it. After four days' use, the cable broke, and in twelve days' use, within a period of about two months, it broke three times, and

proved worthless as a cable. One of the three strands of which the cable was composed was made of inferior and rotten material, and each break of the cable was in this strand. Upon the first break notice and complaint was made to the appellant, and in about two months, and soon after the last break, appellees returned it to appellant.

·The form of action upon the foregoing facts is an ordinary complaint for goods sold and delivered. There were two affirmative answers, in effect the same, the second of which is in substance as follows: The defendants were at the time in the complaint mentioned, and still are, engaged in the business of drilling oil-and gas-wells, in which business they were required to use large and strong ropes or cables. The plaintiff was engaged in the business of furnishing supplies to persons engaged in drilling gas-and oil-wells, among which supplies were such ropes and cables. Defendants admit that at the time mentioned in the complaint they purchased from the plaintiff one such cable to be used by the defendants in the drilling of such wells, and that said cable was and is the goods and merchandise named and described in the complaint. The plaintiff at the time knew that the defendants were engaged in the business of drilling such gas-and oil-wells, and well knew that the defendants were purchasing and did purchase said cable for the purpose of using the same in drilling such wells. Defendants aver that before and at the time of so purchasing said cable they had no means of knowing or testing the qualities or strength of said cable, until they put the same into actual use; that, relying upon the presumed knowledge of the plaintiff of the required qualities of said cable, from its exposing to sale and selling the same, they purchased the same as herein stated; that said cable was not a good cable and fit for the uses and purposes for which it was intended, and for which defendants purchased it, but it was wholly worthless and unfit for such purposes; that it was rotten, weak, and would not sustain the strain and

weight necessarily put on it in drilling such wells, and broke and went to pieces when used in drilling less than fifty feet in depth, and therefore there was great danger of losing defendant's tools in use of said cable in drilling wells, and was therefore of no value whatever for the purposes for which defendants purchased the same of said plaintiff; that as soon as they discovered the worthlessness of said cable they returned the same to the plaintiff at its place of business, and notified the plaintiff of the condition and worthlessness of the same. A demurrer to each of the affirmative answers was overruled.

These answers were drawn and the case was tried, and is presented here, upon the theory that the cable was sold by the appellant to appellees upon an implied warranty

1. that it was reasonably fit for the purpose for which it was to be applied. The challenged insufficiency of the evidence to sustain the finding of the court also presents the same question, and it will not be useful for us to give the demurrers and the evidence separate consideration.

Was there an implied warranty of fitness accompanying the sale? There are but few subjects of the law that appear, upon a cursory examination of the authorities,

2. to be in such a hopeless state of confusion as that which relates to what constitutes proper exceptions to the rule of *caveat emptor*. A closer study, however, will reveal that the apparent disagreement is largely the result of unguarded language employed by judges and writers, not in sympathy with the harshness and apparent incongruities of the old rule, and, while there has been much breaking away from the ancient maxim, and considerable difference in the paths chosen, yet the ostensible conflict is due quite as much to the difference in the facts of particular cases, as to the doctrine applied. "The maxim of *caveat emptor*," says Mr. Story, "seems gradually to be restricted in its operation, and limited in its domain, and beset with the circumvallations of the modern doctrine of

implied warranty, until it can no longer claim the empire over the law of sales, and is but a shadow of itself." Story, Sales (4th ed.), §359. It may be said, however, that when chattels are sold generally for all purposes to which they are adapted, and the seller is not the manufacturer nor producer, and the property is in existence, and may be inspected by the buyer, and there is no fraud on the part of the seller, the maxim *caveat emptor* applies; even though defects exist in the goods which are not discoverable on examination. The doctrine of *caveat emptor* rests upon the principle that the purchaser sees, or may see, and know what he buys; and not demanding an express warranty, it will be conclusively held that he was content to rely upon his own judgment, and if the goods prove inferior in quality, the purchaser has no remedy, but must bear the loss himself. *Brantley* v. *Thomas* (1859), 22 Tex. 270, 73 Am. Dec. 264; 2 Kent's Comm. (14th ed.), \*479.

But where the purchaser has no opportunity to inspect the goods, and no knowledge of the quality, and no means of forming an opinion of his own with respect to the quality, the reason of the rule fails; and upon such 3. facts an important exception has been engrafted upon the rule, namely, where the contract is for a certain kind of chattel, for a particular purpose known to the seller, and it is impracticable or no opportunity is afforded the buyer to inspect the property before delivery, and where the article is kept for sale by the vendor as suitable for the particular purpose, and sold by him to the vendee for a sound price, and as adapted and good for the purpose, there arises an implied warranty that the thing is reasonably fit for the special purpose intended by the vendee; and this is true without reference to whether the transaction relates to an executory or completed contract, or whether to a manufacturer or dealer. This exception is controlling in this case, and we therefore deem it proper to indicate the current of authorities upon the point.

Oil-Well Sup. Co. *v.* Watson—168 Ind. 603.

Among the English cases, and one in which many of the English decisions are reviewed and classified, is *Jones* v. *Just* (1868), L R. 3 Q. B. 197. The plaintiff, in Liverpool, contracted with the defendant for 200 bales of Manila hemp, soon to arrive from Singapore in certain ships. The hemp arrived, was delivered to the plaintiff and paid for. Upon examination it was found that the hemp had been damaged by salt water, unpacked, dried and repacked before shipment from Singapore, and while it had not lost is character as hemp, still it had been rendered unmerchantable as Manila hemp. The defendant did not know, when he made the contract, the condition of the hemp. In disposing of the case the court said: "It appears to us, in the result of this case, that the maxim *caveat emptor* cannot apply, and that it must be assumed that the buyer and seller both contemplated a dealing in an article which was merchantable. The buyer bought for the purpose of sale, and the seller could not on any other supposition than that the article was merchantable have found a customer for his goods, and the buyer must be taken to have trusted to the judgment, knowledge, and information of the seller, as it is clear that he could exercise no judgment of his own; and this appears to us to be at the root of the doctrine of implied warranty."

The fifth classification referred to is thus stated: "Where a manufacturer undertakes to supply goods which he makes, or in which he deals, but which the vendee has not had the opportunity of inspecting, it is an implied term in the contract that he shall supply a merchantable article. * * * Therefore it must be taken as established that, on the sale of goods by a manufacturer or dealer, to be applied to á particular purpose, it is a term in the contract that they shall reasonably answer that purpose."

In the case of *Gardener* v. *Gray* (1815), 4 Camp. 144, the contract was for the sale of twelve bales of "waste silk." It was purchased in London and sent to Manchester, and

there found, upon arrival, to be of a quality not salable under the denomination of "waste silk." Lord Ellenborough, in his opinion, said: "Under such circumstances, the purchaser has a right to expect a salable article answering the description in the contract. Without any particular warranty, this is an implied term in every such contract. Where there is no opportunity to inspect the commodity, the maxim of *caveat emptor* does not apply."

"When," says Mr. Story, "an examination of manufactured goods is, from their nature or situation at the time of the sale, impracticable, a warranty will be implied that they are merchantable. Thus * * * if they be in bales so that an examination of the center cannot be made without tearing each bale to pieces, the seller will be understood to warrant them to be merchantable, and of the quality demanded and fairly expected by the buyer." Story, Sales (4th ed.), §368. See, also, §371, and notes.

Benjamin, Sales (2d ed.), p. 55, states the following as the rule established by the authorities: "Where goods are ordered by description from a seller who deals in goods of that description (whether he be the manufacturer or not) and the buyer has no opportunity of examining the goods, there is an implied condition that the goods shall be of merchantable quality." See, also, Benjamin, Sales (7th Am. ed.), §645.

"It is likewise held," says Mr. Chitty, "that where there is a contract to supply goods of a particular description, and the buyer has not had an opportunity of inspecting the goods, they must not only, in fact, answer the description, but must also be salable or merchantable under that description." Chitty, Contracts (12th ed.), p. 495. See, on same subject, 2 Kent's Comm. (14th ed.), *478.

On a sale of hogs, known by the seller to be intended for market, and with no opportunity for inspection, there is an implied warranty of fitness. *Best v. Flint* (1885), 58 Vt. 543, 5 Atl. 192, 56 Am. Rep. 570.

In *Brantley* v. *Thomas* (1858), 22 Tex. 270, 73 Am. Dec. 264, the purchaser executed his note for a lot of tobacco, which, after delivery, without a chance to inspect, was found to be of an inferior quality. With respect to which the court says: "The rule of caveat emptor is founded in the idea that the purchaser sees what he buys, and exercises his own judgment; and the strong tendencies of the modern decisions is to imply a warranty of quality in all cases where the purchaser has no opportunity to exercise his own judgment."

A commercial contract for the delivery of "one cargo of ice" implies the condition that the ice shall be of a merchantable quality. "When the sale is of specific goods, but the buyer has no chance to inspect them, the name given to the goods in the contract, taken in its commercial sense, may describe all that the purchaser is entitled to demand." *Murchie* v. *Cornell* (1891), 155 Mass. 60, 29 N. E. 207, 14 L. R. A. 492, 31 Am. St. 526. So it was held with respect to "Manila sugar." *Gossler* v. *Eagle Sugar Refinery* (1869), 103 Mass. 331. To same effect see *Hood* v. *Bloch Bros.* (1886), 29 W. Va. 244, 11 S. E. 910; *Lee* v. *Sickles Saddlery Co.* (1889), 38 Mo. App. 201; *Shaw* v. *Smith* (1891), 45 Kan. 334, 25 Pac. 886, 11 L. R. A. 681; *Davis, etc., Drill Co.* v. *Mallory* (1905), 137 Fed. 332, 69 C. C. A. 662, 69 L. R. A. 973; *Merchants, etc., Sav. Bank* v. *Fraze* (1894), 9 Ind. App. 161, 53 Am. St. 341; *Zimmerman* v. *Druecker* (1896), 15 Ind. App. 512.

Concerning the facts of this case, it is shown that appellees ordered a specific article, namely, a two-inch Fitler cable. The seller was personally acquainted with 4. the buyers, knew that their business was the drilling of wells, and knew that a two-inch cable was used in that field for no other purpose than drilling wells. The buyers had spent many years in the business and were well acquainted with the reputation and merits of the Fitler cable, and knew the value and suitableness of the ordinary

product of the Fitler mills for drilling purposes. Appellant was a dealer in oil-well supplies, and presumably well advised as to the brands of goods that were most suitable and acceptable to the trade in that district, and was keeping the Fitler cable in stock, and holding it out to those engaged in drilling as good and sufficient cordage for their business, offering to sell, not an inferior quality of the same, but an ordinarily sound cable, fit and sufficient for drilling. At the time of the transaction there was not a word said about the cable's being sound or unsound. The buyers doubtless relied, as they had the right to, upon the judgment and information of the seller, perhaps not to rely upon him to examine the quality of that particular cable, but upon his having such information from the manufacturer as warranted his offering to sell the article as of good grade. So there can be not the shadow of doubt but that the vendor and vendees at the time mutually intended and believed they were transferring a two-inch Fitler cable possessed of all the virtues ordinarily possessed by the cables bearing that name.

A rotten Fitler cable, unfit for drilling, was not contemplated by the parties. Such a thing did not enter the negotiations. The price was made on the basis that the articles should be sound and of good grade; and, being worthless as a cable, it cannot be said that the buyers got what they bought, or that the seller delivered what he sold.

But counsel for appellant affirm that appellees neglected a sufficient opportunity to examine the goods before purchasing, and should therefore be brought within the 5. rule of *caveat emptor*. We think otherwise. It is without controversy that, when the sale was made the rope or cable from end to end was wrapped in burlap, and the coil made by 1,400 feet of two-inch rope was also enveloped in burlap. The package weighed 2,010 pounds, and it was wholly impracticable to inspect it for

infirmities.   Tearing the coil asunder, and unwrapping the rope throughout, would have been unavailing, since the evidence is uncontradicted that the defect in the material, and want of strength in one strand of the rope, could not have been discovered or tested in any other way than by attaching it to the drill.   *Locke* v. *Williams* (1876), 40 Wis. 377, 381.

A further objection to the answers is that neither avers that the defendants relied upon the warranty.   It is alleged that, "relying on the presumed knowledge of the plaintiff of the required qualities of said cable from their exposing it for sale, and selling the same, they purchased it as herein stated."   Assuming that such an averment was essential to the answers, we hold that the one quoted was sufficient on demurrer.

It is further argued that the answers are bad because they fail to aver the particulars of the breach, and that the cable was tested in a proper manner and within a reasonable time.   The allegations are: "Defendants aver that said cable was not a good cable and fit for the uses and purposes for which it was intended and for which the defendants purchased it, but it was wholly worthless and unfit for such purposes.   That it was rotten, weak, and would not sustain the strain and weight necessarily put on it in drilling such wells, and broke and went to pieces when used in drilling less than fifty feet in depth. *   *   *   That as soon as they discovered the worthlessness of said cable they returned the same to said plaintiff at his place of business, and notified him of the condition and worthlessness thereof."   The third paragraph is different only in this: "That it was rotten, weak, and would not and did not sustain the weight," etc.   The complaint sets forth that the cable was sold and delivered on June 3, 1904.   The answers in question were filed at the November term following.   The answers show that the cable was knowingly sold and bought for the particular purpose of

drilling oil-and gas-wells; that it was not fit for that purpose; that it was rotten, and would not sustain the weight and strain of the drill, and broke and went to pieces when used in drilling less than fifty feet in such wells; and that as soon as they discovered the worthlessness of the cable they notified the plaintiff and returned the cable to him at his place of business. So it happens that the sale of the property, its test, its return to the plaintiff, and the filing of the answers embraced a period of about five months. The charge is that the cable was unfit, was rotten, and when used in drilling would not sustain the weight of the drill, and broke before it had drilled fifty feet. These averments are sufficient to characterize the test, and to show the unfitness of the property for the specific purposes contemplated by the parties to the sale. It was not necessary, in a case like this, to allege the specific date of the test. Neither do we understand that any such doctrine is asserted in *Johnston Harvester Co.* v. *Bartley* (1882), 81 Ind. 406. There being no stipulation in the contract as to the time in which the test or return should be made, in case it 8. proved unsatisfactory, the law implies a reasonable time to support a rescission, and what constitutes a reasonable time under the circumstances was in this case, and is as a general rule, a question of fact for the jury. *Warder, etc., Co.* v. *Horne Bros.* (1900), 110 Iowa 285, 81 N. W. 591; *Pierson* v. *Crooks* (1889), 115 N. Y. 539, 551, 22 N. E. 349, 12 Am. St. 831; *Whitcomb* v. *Denio* (1880), 52 Va. 382, 390; *Parmlee* v. *Adolph* (1875), 28 Ohio St. 10, 17; *Clark* v. *Wheeling Steel Works* (1893), 53 Fed. 494, 3 C. C. A. 600, 604.

If the averments, therefore, are such as to warrant proof of the particular time at which, or during which, the test was made—and we think they are—it must be held sufficient on demurrer. The reply in denial put all the averments of the answers in issue. The complaint and answer thereto made it appear to the court that the test was some

time within the five months after the sale; and whether it was a reasonable, or an unreasonable time, under the circumstances, was one of fact, and not of law. The answers are uncertain as to the specific date, but the plaintiff's remedy, if any, for uncertainty was by motion. *Copeland* v. *State, ex rel.* (1890), 126 Ind. 51; *Thompson* v. *Madison Bldg., etc., Assn.* (1885), 103 Ind. 279, 280; 2 Elliott, Gen. Prac., §1041. We therefore conclude that the answers are sufficient, and, under the evidence in support thereof, the sale of the goods by the appellant to appellees carried with it an implied condition that the cable sold was fit—not the best, but a grade of two-inch Fitler cable that was merchantable for drilling purposes.

We find no error. Judgment affirmed.

Montgomery, C. J., dissents.