## OIL-WELL SUPPLY COMPANY *v.* PRIDDY.

[No. 5,948.  Filed February 5, 1908.]

1. PLEADING.—*Counterclaim.*—*Sales.*—*Implied Warranty.* — *Damages.*—A counterclaim, in an action for the price of iron pipe to be used in sinking an oil-well, alleging that defendant bought such pipe for the purpose of using it in sinking a certain well, to plaintiff's knowledge, and that it was unfit for the purpose and

worthless, and by reason of its unfitness, defendant was damaged, is sufficient upon demurrer. p. 202.

2. TRIAL.—*Instructions.—Duplication.*—It is not erroneous to refuse instructions requested, which are already covered by those given. p. 204.

3. SALES.—*Implied Warranty of Fitness.*—A dealer, as well as a manufacturer, who sells an article for a specific purpose, the purchaser having made no inspection nor tested its fitness therefor, impliedly warrants that the article is fit for the use intended. p. 205.

4. TRIAL. — *Variance. — Amendments. — Presumptions.—Appeal.* — Where there is a variance between the pleading and proof, which might have been obviated by an amendment at the trial, such pleading will be deemed amended on appeal. p. 205.

5. SAME.—*Instructions.—Inapplicability to Evidence.—Sales.—Specific Articles.—Implied Warranty.*—An instruction that if the plaintiff bought from the defendant, a dealer, a specific brand of pipe, there would be no implied warranty of fitness by defendant, is correctly refused as tending to mislead, where the uncontradicted evidence showed that the purchaser ordered such pipe without inspection: that it was properly branded; that the quality thereof could be determined only by actual use, and that it proved insufficient when tested by actual use. p. 206.

6. EVIDENCE.—*Exclusion of.—Cumulative.*—It is not erroneous to exclude evidence showing that a certain manufacturer made, during a specific period, but one kind of pipe, and that defendant sold, during the period in controversy, only such kind, where such facts were already established by uncontradicted evidence. p. 209.

7. APPEAL.—*Weighing Evidence.*—A verdict which was supported by the evidence upon the theory of the complaint, will not be set aside on appeal, as unsupported, where the theory of the complaint was sufficient. p. 210.

From Jay Circuit Court; *John M. Smith,* Judge.

Action by the Oil-Well Supply Company against Emerson Priddy. From a judgment for plaintiff for less than its demand, it appeals. *Affirmed.*

*Abram Simmons,* for appellant.

*Richard H. Hartford,* for appellee.

MYERS, J.—This action was instituted by appellant against appellee to recover for goods and merchandise sold and delivered by appellant to appellee. The appellant was a retail dealer in oil-well supplies. The appellee was engaged in the

business of producing oil. The account sued on was for oil-well supplies, and undenied by appellee. Among the goods and merchandise so sold and purchased was a certain drive-pipe, which appellee, by way of amended counterclaim in three paragraphs, alleged to be defective, and by reason of such defect he was damaged. Appellant's separate demurrer to each paragraph of the counterclaim was overruled. Appellant answered said counterclaim in two paragraphs: One a general denial, the other averring affirmative facts in bar. Appellee's demurrer to the latter paragraph was sustained. The issues were submitted to a jury, resulting in a verdict and judgment in favor of appellant for $180.66.

Appellant's motion for a new trial was overruled, and on appeal to this court it has assigned and argued as error the overruling of its demurrer to each paragraph of the amended counterclaim and the overruling of its motion for a new trial.

From the first paragraph it appears that appellant was engaged in the manufacture of drivepipe and other articles required in drilling and operating oil- and gas-wells, 1. and in selling the same from its store in Geneva, Indiana, to persons engaged in drilling and operating oil- and gas-wells; that appellee was engaged in drilling and operating oil-wells near said town, and for the purposes of his business purchased from appellant a quantity of eight-inch drivepipe, to be used by him in drilling an oil-well; that such drivepipe was included in the articles furnished and sold by appellant for such use, and appellant had full knowledge of its intended use and the place where it was to be used by appellee; that the price charged was ninety-eight cents per lineal foot, which was a fair price for a good quality of such pipe, made of sound material, and free from defects; that its use required good, sound pipe, made of good material, and free from defects, in order to withstand the great force required to drive the same, of which fact appellant had full

knowledge; that appellant agreed to furnish said pipe, and warranted the same to be of sound material, free from defects, and suitable for defendant's said purpose; that it was not suitable for the purpose intended, or for the purpose for which it was bought, in that it was defective, made of unsound material, and in a careless and unworkmanlike manner, and was too hard and brittle. From lack of information, appellee was unable to state with greater particularity wherein the material was unsound and insufficient and the manufacture defective, but alleges that said pipe was defective and insufficient, and lacked the strength and stability necessary to be used in drilling an oil-well at the place where it was to be used, and was worthless for such purpose; that appellee attempted to use the pipe in the construction of an oil-well, and, without his fault, it buckled and split at the weld, bent, broke and collapsed. Other facts are alleged showing various items of damage, all charged as having been occasioned by the failure of the pipe to be made of good material, free from defects, and suitable for the purpose intended, and the use for which it was sold by appellant and purchased by appellee. The second paragraph alleges practically the same facts as the first, with the addition that appellee purchased of appellant a ''certain lot of wrought-iron eight-inch drivepipe from its said store in Geneva, but avers that, instead of delivering the same to him, plaintiff delivered only a part of wrought-iron drivepipe and delivered the balance of steel drivepipe,'' and omitted the allegation that appellant warranted the drivepipe to be of sound material, etc., but alleges that it warranted the pipe to be of wrought iron, and also alleges that had it been of wrought iron it would have been sufficient, but that it was not all of wrought iron; that a part of it was steel, and lacked the strength and stability possessed by wrought iron; and that by reason of the steel pipe furnished by appellant, and without appellee's fault, 147 feet of the pipe was lost in the well, etc. The third paragraph,

in addition to the allegations of the first, stated that said eight-inch drivepipe "had been manufactured for the plaintiff, under its supervision, and subject to its inspection before delivery to it." Appellant insists that each paragraph of the amended counterclaim proceeds upon the theory of an express warranty, and is insufficient because there is no allegation in either paragraph that he relied upon the warranty and was thereby deceived. Also that neither paragraph is good upon the theory of an implied warranty, because of a failure to allege facts showing that the drivepipe was properly tested within a reasonable time after the purchase, and because each paragraph shows an executed and not an executory agreement, whereby the fitness of the article wanted for a particular purpose was left to the determination of the vendor. The facts disclosed by each of these paragraphs, and the objections urged as to their insufficiency, present practically the same questions considered and decided by the court in the case of *Oil-Well Supply Co.* v. *Watson* (1907), 168 Ind. 603, and upon the authority of that case we hold that the demurrers were properly overruled.

In support of appellant's motion for a new trial a number of reasons were assigned, based upon the court's refusal to give to the jury certain instructions by it requested, and in giving to the jury certain instructions over its objections, and in refusing to admit certain testimony offered by appellant, and because the verdict of the jury was not sustained by sufficient evidence and was contrary to law.

One of the instructions asked and refused, and claimed to be pertinent to the second paragraph of the counterclaim, was based upon the theory that if the jury found that the threads stripped from the end of one or more of the joints of drivepipe, such finding alone would not authorize a recovery on this paragraph, unless it was also found that the cause of the giving away of the threads was that said joints of pipe were of steel instead

of wrought iron, etc.   The court did not err in this ruling, for the reason that the subjects covered by this instruction were fully and clearly embraced in instruction two, requested by appellant and by the court given to the jury. *New Jersey, etc., R. Co.* v. *Tutt* (1907), 168 Ind. 205; *M. S. Huey Co.* v. *Johnston* (1905), 164 Ind. 489.

The court also refused appellant's request to instruct the jury that an implied warranty of fitness applies to a manufacturer only, and not to a dealer.   And that each

3.   paragraph counts upon the allegation that the "Oil-Well Supply Company manufactured the drivepipe mentioned in said counterclaim," and unless this allegation is proved by a preponderance of the evidence your verdict must be for the plaintiff.   There was no error in refusing this instruction.   Implied warranty of merchantability, as well as fitness for a contemplated use, applies to the dealer as well as to the manufacturer where the article is held out and kept for sale for a particular purpose, the seller being advised by the purchaser that it is to be used for that purpose, and receiving a sound price, knowing that the purchaser has not inspected the article and is ignorant of its quality or soundness.   *Oil-Well Supply Co.* v. *Watson, supra.*

As to proof of the allegation as laid, it has a number of times been held by the Supreme Court and this Court that

4.   a technical variance between the proof and the allegation, which might have been obviated by an amendment of the pleading in the court below to conform to the proof, will on appeal be treated as made.   *Baltimore, etc., R. Co.* v. *Slaughter* (1906), 167 Ind. 330; *Hartwell Bros.* v. *Peck & Co.* (1904), 163· Ind. 357; *Johnson* v. *McNabb* (1893), 7 Ind. App. 393; *Robison* v. *Wolf* (1901), 27 Ind. App. 683; *Cummings* v. *Girton* (1898), 19 Ind. App. 248; 1 Thornton, Civil Code, §§167, 168.

Appellant also insists that the court erred in refusing to instruct the jury, in substance, as follows:   That if at the

time appellant sold and delivered the pipe to appellee it was a dealer in drivepipe, and if appellee ordered, purchased and received from appellant a known and defined brand of pipe, then appellee, by his order and purchase, defined the particular pipe he wanted, and he thereby reposed no confidence or trust in appellant, and there should be no warranty by appellant that said pipe would answer the particular purpose intended by appellee. The rule of *caveat emptor* is the underlying principle of this instruction, and in its support appellant argues that an implied warranty of fitness does not arise when the buyer selects, buys and receives a specific article, although the vendor knows it is intended for a particular use. From the evidence, about which there is little or no dispute, it appears that on and for several years prior to October 25, 1901, appellant had a store in Geneva, Indiana, and was engaged in the sale of gas- and oil-well supplies, including drivepipe. The drivepipe was kept in a yard used for the storage of metal pipe. Appellee, as appellant knew, was then, and for years prior thereto had been, engaged in drilling and operating oil-wells. Appellee, upon a certain evening, within a week prior to October 25, 1901, entered said store and told appellant's salesman that he wanted "some pipe for a long drive," to which appellant's agent responded, "all right," and inquired the amount wanted, and appellee told him: "I will take about 400 feet, as we have a long drive." Appellee ordered 400 feet of twenty-eight-pound iron pipe, half long joints and half short joints. Appellee knew that appellant handled Reading pipe exclusively, and assumed that he was getting Reading pipe. Appellee did not see the pipe at the time he gave the order, nor until it was delivered at the well for use. Appellant's salesman knew where the pipe was to be used, and said it was iron pipe. Appellee in making the order did not designate any particular brand of pipe, but knew Reading pipe was recommended as wrought iron. He testified that he thought it

was all branded "Reading Iron Company," or as iron pipe. From looking at the pipe before it was used he could not tell whether it was steel or iron. It all looked alike. In driving the pipe two joints collapsed. They were both, in the opinion of the witness, steel joints. The threads on both crumbled, stripped off, and one joint split. They were too brittle to stand the drive. After removing these joints from the well it could be seen that they were steel. Two holes were started. The first was drilled 207 feet, and was abandoned because the pipe collapsed and buckled, "that is to say, it buckled in on itself, and dented in so that the tools would not pass through it." The second hole was started, and at a depth of sixty feet trouble occurred again, and all the pipe was pulled out, and in this hole a second joint, designated by appellee as steel pipe, was found. The well, in which was used 370 feet of drivepipe, was finally completed. All the pipe received on account of said order, and not damaged by the trouble mentioned, was used. It was twenty-eight-pound pipe. Twenty-eight-pound wrought-iron pipe of good quality and not defective was sufficient for that drive. The evidence shows that in the construction of a number of wells in the vicinity of Geneva deep drives were required, ranging upwards of 250 feet, and twenty-eight-pound wrought-iron pipe was successfully used. The price paid for the pipe was the price for good, sound pipe. One of appellant's witnesses testified that a piece of drivepipe at Geneva was pointed out to him by a Mr. Baker. It was wrought-iron pipe. Appellant has not pointed out any evidence identifying this piece of pipe as being part of the pipe purchased from appellant. Appellant says "the defect, if any, in the pipe was latent. The pipe was painted black." The instruction under consideration, when applied to this evidence, tends to place this case upon an erroneous theory, and thereby to mislead rather than assist the jury in arising at a correct conclusion. The stated facts, as said in *Zimmerman* v. *Druecker* (1896), 15 Ind. App. 512,

"fairly brings the case within the rule that where a chattel is to be furnished by the seller to the order of the purchaser, which is to be used for a certain purpose, and the seller knows when he accepts the order for such chattel that it is intended for such special purpose, he impliedly warrants the article to be reasonably fit for the purpose for which it is to be used, or for which it is intended by the buyer." In the case of *Oil-Well Supply Co.* v. *Watson, supra,* the order was for a two-inch Fitler cable. · This brand of cable was furnished by the seller, and it turned out to be defective in material, and under the circumstances of that case, in many leading particulars the same as the case at bar, the court said: "It cannot be said that the buyers got what they bought, or that the seller delivered what he sold. * * * Since the evidence is uncontradicted that the defect in the material, and want of strength in one strand of rope, could not have been discovered or tested in any other way than by attaching it to the drill." In the case before us it is undenied that appellee ordered twenty-eight pound wrought-iron pipe. No one disputes the fact that, if iron, in part, it was defective. Appellee says two joints of the pipe were steel. In either case, under the facts, he did not get what he bought. It was painted and all looked alike, but when put to use for the purpose intended two joints were shown to be defective, in that the threads crumbled and the pipe was too brittle to stand the drive. Under the ruling in the cases last cited, there was no error in refusing the instruction. *Glucose Sugar, etc., Co.* v. *Climax Coffee, etc., Co.* (1907), 40 Ind. App. 182.

Appellant assails instruction one given by the court at the request of appellee, on the ground that it is based upon the first paragraph of the counterclaim, and proceeds upon the theory of an implied warranty; that it does not embrace all the elements required to constitute an implied warranty, for the reason that it omits to state that an implied warranty only arises where there is an executory agreement by

the dealer to supply an article not yet ascertained, not designated by the buyer, his need only known, and the selection of the article is left to the judgment of the seller, and because it fails to state that an implied warranty of fitness has application to the manufacturer only and not to the dealer. The objections to this instruction have all been raised and presented in other forms, and the ruling has been against appellant's contention, as will appear from this opinion.

Appellant offered to prove by questions and answers that the Reading Iron Company, during the year 1901, and during the month of October, 1901, did not manufacture and place on the market any other kind of eight-inch, twenty-eight-pound drivepipe except wrought iron, and was not equipped with machinery for making any other kind of drivepipe. The witness to whom these questions were addressed testified, in answer to questions by appellant, that he had been with the Reading Iron Company continuously since June 15, 1880, and that all of the eight-inch, twenty-eight-pound drivepipe made by that company during that time was made only from wrought iron material, and that during the month of October, and the entire year of 1901, the only brand of eight-inch, twenty-eight-pound drivepipe made by the Reading Iron Company was wrought iron. Another of appellant's witnesses testified that in the month of October, 1901, appellant, from its store at Geneva, Indiana, was selling eight-inch, twenty-eight-pound Reading wrought-iron drivepipe, and that it was all from the Reading Iron Company. Upon cross-examination appellee admitted that he knew appellant dealt exclusively in Reading pipe, and that the joints of pipe received by him were branded "Reading Iron Company." The evidence thus introduced by appellant was not denied or contradicted. In view of this state of the record the exclusion of the proposed testimony was harmless error.

Appellant also insists that the verdict of the jury was not sustained by sufficient evidence, and was contrary to law, for the reason that no express warranty is shown, nor

7. was there any proof that appellant manufactured the pipe in controversy. The cause was tried upon the theory of an implied warranty, and the evidence was sufficient upon that theory. The proof shows that appellant was a dealer in drivepipe, and did not manufacture the pipe sold to appellee. What we have heretofore said as to the effect of this proof disposes of these reasons for a new trial in appellee's favor. In our judgment, appellant has not shown reversible error.

Judgment affirmed.